Lisandro **RIVERA**, Gregorio Matias Santiago, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Antonio Gonzáles **CHAPEL**, Secretary of Agriculture of the Commonwealth of Puerto Rico, and Raúl Bras Serra, Administrator of the Milk Industry Regulation Office of the Commonwealth of Puerto Rico, Individually and in their official capacity, Defendants,

Puerto Rico Farmers Association, Intervenor.

Civ. No. 793–73.

United States District Court, D. Puerto Rico.

Oct. 15, 1973.

Pedro J. Varela, Puerto Rico Legal Services, Inc., Luis Sánchez Betances, Hato Rey, P. R., for plaintiffs.

Miriam Naveira de Rodón, Sol. Gen., Peter Ortiz, Roberto Armstrong, Jr., Asst. Sols. Gen., San Juan, P. R., for defendants.

Pieras & Touella, Hato Rey, P. R., for intervenor.

## OPINION

PESQUERA, District Judge.

This action has been brought to declare unlawful and enjoin what the plaintiffs allege to be an unlawful and/or unwarranted increase in the price of fresh milk, as well as the unlawful establishment of a mechanism for the automatic adjustment of the same, by the defendants Antonio González Chapel, Secretary of Agriculture, and Raúl Bras Serra, Administrator of the Milk Industry Regulation Office of the Commonwealth of Puerto Rico.

The suit was brought as a class action, on behalf of all consumers of fresh milk who have been or may be affected by the alleged unlawful acts of the defendants, by the plaintiffs Gregorio Matías Santiago, who operates a small cafeteria or "kiosko" at the campus of the University of Puerto Rico, and Lisandro Rivera, who claims to be a labor organizer and who lives in consensual relation with a "companion". Jurisdiction is based on 42 U.S.C. Section 1983 and 28 U.S.C. Section 1343.

On the same date the complaint was filed, August 31, 1973, and after an informal hearing with the attorneys for plaintiffs and defendants, this Court denied plaintiffs' request for a temporary restraining order. Instead, the Court issued an order against defendants to show cause on September 5, 1973 why plaintiffs' request for a preliminary and permanent injunction should not be granted. On September 4, 1973 plaintiffs filed an amended complaint. On the day of the hearing on the order to show cause, the Puerto Rico Farmers Association requested authorization to intervene and, as defendants had done, filed a motion to dismiss the complaint. Authorization to intervene was granted without objections from plaintiffs and the Court proceeded to hear the motions to dismiss. After due consideration, the Court denied both motions and, pursuant to the request of the parties, continued the scheduled hearing to September 18, 1973. Defendants and the intervenor

answered the amended complaint accepting most of the allegations made by plaintiffs and denying some of them for lack of information. Defendants and the intervenor also raised as affirmative defenses the same contentions they had previously made in their motions to dismiss, mainly addressed to the jurisdiction of this Court.

Before commencement of the hearing on September 18, 1973, the Court denied plaintiffs' request to be certified as a class, since it would entail unnecessary delays and strain on the Court. The Court found that because of the nature of the action and the remedy requested, the same result would be obtained by limiting the action to that of the individual plaintiffs. The Court also disposed of a request made by defendants and the intervenor for reconsideration of their motions to dismiss on the ground that a "door" in the state forum had been opened to plaintiffs as a result of the decision rendered on September 11, 1973 by the Supreme Court of Puerto Rico in the case of Ortega Cabrera et al v. Superior Court of Puerto Rico, Case No. 0–72–41. Aside from the delay that would result if plaintiffs were forced to reinitiate their action, it is not clear that plaintiffs would be able to obtain injunctive relief in the state courts in view of the specific anti-injunction provisions of the statute approved to regulate the milk industry (5 L.P.R.A. 1092–1118, Section 1113(c)).

Pursuant to the provisions of Rule 65(a)(2) of the Federal Rules of Civil Procedure, and the oral stipulation of the parties, the trial of the action on the merits was advanced and consolidated with the hearing on the application for a preliminary injunction.

During trial, plaintiffs presented in evidence, without objection from defendants or the intervenor, the following documents:

1. Report of the University of Puerto Rico Agricultural Experiment Station, dated June, 1973, marked as Exhibit 1.

2. Notice of Public Hearings, published in the San Juan Star, August 3, 1973, marked as Exhibit 2.

3. Regulation No. 1 of the Milk Industry, marked as Exhibit 3.

4. Resolution of the Milk Industry, of August 28, 1973, marked as Exhibit 4.

5. Regulation No. 1, as amended, marked as Exhibit 5.

6. Letter of plaintiffs' counsel to defendant Secretary of Agriculture, Antonio González Chapel, dated August 27, 1973, marked as Exhibit 6.

7. Letter of plaintiffs' counsel to defendant Raúl Bras Serra, dated August 27, 1973, marked as Exhibit 7.

8. Letter of defendant Raúl Bras Serra to counsel for plaintiffs, Pedro J. Varela, marked as Exhibit 8.

9. Public Notice Announcing Price Increase, published in the San Juan Star on August 31, 1973, marked as Exhibit 9.

10. Report of the Milk Administrator to the Secretary of Agriculture, dated August 26, 1973, marked as Exhibit 10.

Plaintiffs also presented their own testimony and those of the defendants, Secretary of Agriculture, Antonio González Chapel, and the Administrator of the Milk Industry, Raúl Bras Serra. Finally, Dr. Alejandro Asmar, Economist and Director of the Consumers Research Center, testified as plaintiffs' economic expert.

At the end of plaintiffs' case, defendants and the intervenor moved the Court to dismiss the complaint based on Rule 41(b) of the Rules of Federal Procedure. After hearing counsel for both parties, the Court denied this request.

Defendants presented as their only witness an economic expert, Dr. George G. Pringle, who testified in reference to the studies made by the University of Puerto Rico Agricultural Experimental Station.

*Statement of the Case and Controversy*

Urged by the Administrative Board of the Milk Industry Development Fund, the Administrator of the Milk Industry Regulation Office requested the Agricultural Experiment Station of the University of Puerto Rico to make a study of the problems being encountered by milk producers in Puerto Rico. When the report was completed, the Administrator held public hearings and on August 28, 1973, upon recommendation of the Administrator, the Secretary of Agriculture decreed an amendment to Regulation No. 1 of the Milk Industry authorizing an increase of three cents (3¢) per quart in the price of fresh milk at producers' level, plus an additional compensation to the producers to be determined according to the price of concentrated feed for cattle as fixed by the Secretary of Consumers Affairs. For the month of September 1973 an increase equivalent to four cents (4¢) per quart had been determined by the Secretary of Consumers Affairs for this product, resulting therefore, in an overall increase of seven cents (7¢) per quart.

Plaintiffs assert that defendants have acted illegally because (1) the price increase was made to benefit only one sector of the milk industry; (2) the amendment to Regulation No. 1 of the Milk Industry results in the taking of property without due process of law since defendants will not intervene in the future determination of the price of milk, as statutorily bound to do; (3) defendants did not take into consideration in amending Regulation No. 1 of the Milk Industry all of the factors required by law; (4) defendants failed to obtain the assistance of the Advisory Board created by the milk regulation statute (5 L.P.R.A. 1098) before decreeing the amendment to Regulation No. 1 of the Milk Industry; (5) defendants failed to file the amendment of Regulation No. 1 of the Milk Industry with the Department of State of the Commonwealth of Puerto Rico, as required by statute, before its application; and (6) because in promulgating the amendment to Regulation No. 1 of the Milk Industry, the defendants acted ultra vires since they do not have the statutory power to delegate to another agency of the Commonwealth of Puerto Rico the function of determining the price of fresh milk and furthermore without prior public hearings.

The defendants and the intervenor have advanced several reasons in support of their request that the complaint be dismissed. Those based on procedural matters were disposed of before or during trial, leaving for consideration only two substantive defenses, that the complaint fails to raise a substantial federal question and that defendants have acted within the power granted to them by statute, and, therefore, plaintiffs' due process rights have not been violated.

*Findings of Facts*

Upon consideration of all the oral and documentary evidence admitted during trial, as well as the oral arguments and written memoranda of the attorneys for all the parties, the Court makes the following findings of facts:

1. Plaintiff Lisandro Rivera and the "companion" he cohabits with, are daily consumers of fresh milk.

2. Plaintiff Gregorio Matías Santiago and his family are also fresh milk consumers. He also operates a small cafeteria or "kiosko" on the campus of the University of Puerto Rico at Río Piedras, wherein he sells fresh milk to the public as well as cups and half cups ("pocillos") of Puerto Rican style coffee, in which one of the two principal ingredients is fresh milk.

3. The defendants are the Secretary of Agriculture of the Commonwealth of Puerto Rico, Honorable Antonio González Chapel, and the Administrator of the Milk Industry Regulation Office of the Commonwealth of Puerto Rico, Raúl Bras Serra.

4. The Secretary of Agriculture of the Commonwealth of Puerto Rico, hereinafter referred to as the Secretary, is vested by the Milk Industry Regulating

Act (Act No. 34 of 1957) (5 L.P.R.A. 1092 et seq) with the power, among others, to appoint within his Department, with the approval of the Governor of the Commonwealth of Puerto Rico, a Milk Industry Regulation Administrator and give final approval to the minimum and maximum prices of milk (5 L.P.R.A. 1093 and 1103).

5. Pursuant to Section 7 of the above mentioned statute, the Secretary shall appoint an advisory board composed of three representatives of the public interest, a representative of the producers and a representative of the processors. The board's function is that of advising the Secretary and the Administrator on the administration of the statute.

6. The approval of any regulation or the taking effect of amendments to existing regulations, including the fixing of price of milk, shall be after public hearings held before the Administrator or his agent in which all parties concerned may participate. The holding of such hearings must be announced in a newspaper of general circulation in the Commonwealth of Puerto Rico with at least a five days' notice (5 L.P.R.A. 1103(b)).

7. The regulations or amendments to the regulations shall, upon approval by the Secretary, have the force of law and shall take effect from the date such approval is announced indicating where and how copies may be obtained (5 L.P.R.A. 1103(a) and (c)).

8. The Administrator of the Milk Industry Regulation Office, hereinafter referred to as the Administrator, is vested with power to regulate all aspects of the milk industry, including production, elaboration, sterilization, manufacture, storage, purchase and sale, transportation and distribution (5 L.P.R.A. 1096(a) and 1107(a), (d)).

9. In the exercise of such powers, the Administrator may fix minimum and maximum prices for milk in all or any of the channels and levels of distribution, but subject to such requirements established in the Milk Industry Regula-

tory Act as the holding of public hearings whenever required or deemed necessary, and the taking into consideration the needs and interests of the different sectors within the industry so that any measure adopted will tend to stabilize and stimulate the progress in the production and marketing of milk and its by-products and thereby further the prosperity of the industry. To this end, the Administrator shall consider all cost factors involved in the production, processing and sterilizing of milk, including but without limitation, costs of labor, feed, transportation and distribution of milk and its by-products, as well as compliance with the sanitary requirements established by law. He shall likewise take into consideration the supply and demand of the main product and its by-products, the purchasing power of the community according to the income and general business indexes, and other market conditions and economic factors that may affect the supply and demand and/or of its by-products (5 L.P.R.A. 1107).

10. Urged by the Administrative Board of the Milk Industry Development Fund, the Administrator requested a study to the Department of Agricultural Economics and Rural Sociology of the University of Puerto Rico's Agricultural Experiment Station, hereinafter called the Experiment Station.

11. The report by the Experiment Station was submitted to the Secretary and the Administrator in mid July, 1973 and it covered the costs affecting the production phase of the milk industry of Puerto Rico.

12. Public hearings were announced for August 13, 14, 15 and 16, 1973 and they were duly advertised in four newspapers of the Commonwealth of Puerto Rico inviting all interested parties to participate in them.

13. During the public hearings held by the Administrator, it was brought to his attention by representatives of the Institute of Consumers Affairs of the University of Puerto Rico that besides the costs factors involved in the produc-

tion of milk, he was obliged by statute to consider the supply and demand of fresh milk and its by-products, the purchasing power of the community according to the income and general business indexes, and other market conditions and economic factors that were affecting the supply and demand of milk and its by-products.

14. On August 26, 1973 the Administrator submitted to the Secretary a report called "Analysis of Milk Industry" in which a description of the situation of the industry was made. A draft of a resolution to amend Regulation No. 1 of the Milk Industry was also presented by the Administrator to the Secretary.

15. The report on the milk industry submitted by the Administrator to the Secretary on August 26, 1973, as well as the draft of a resolution in which an increase on the price of fresh milk was recommended, took into consideration all the aforementioned factors. The Administrator and the Secretary also took into consideration in determining that an increase in the price of milk was necessary, the subsidies which milk producers receive from different governmental sources.

16. On August 28, 1973 the Administrator and the Secretary issued a resolution whereby Regulation No. 1 of the Milk Industry was amended, specifically its Section 7, sub-sections (a), (b), (c), (ch), (d) and (h). This resolution determined an increase in the price of fresh milk which became effective on September 1, 1973.

17. The increase consisted of a basic one of three cents (3¢) per quart of milk at the producers' level and an additional compensation, also at the producers' level, which is determined on a monthly basis, according to the fluctuations in the price of concentrated feed for cattle, as determined by the Secretary of Consumers Affairs of the Commonwealth of Puerto Rico. This additional increase is in reality the subsidy that the Commonwealth Government gave to the producers of feed for cattle

and which now must be paid by the consumers of fresh milk, since the subsidy ceased in August 1973.

18. In determining the price of milk on a monthly basis as the price of concentrated feed cattle may fluctuate, the Administrator not only will not take into consideration other factors except the price of concentrated feed stock, but further, as has been stated, such price is in effect determined by the Secretary of Consumers Affairs and not by the Secretary of Agriculture.

19. The Advisory Board of the Milk Industry Regulation Office, in which the public interest is represented, was not consulted in respect to the increase in the price of fresh milk for the reason that the same is "holding over" from the last administration.

20. The Administrator published the price increase of milk in local newspapers on August 31, 1973 and filed in the Department of State of the Commonwealth of Puerto Rico the amendments to Regulation No. 1 of the Milk Industry on September 5, 1973.

21. The defendants intend to continue applying the resolution of August 28, 1973 under which Regulation No. 1 of the Milk Industry was amended.

### Challenge to the Jurisdiction of the Court

Jurisdiction of this Court has been assailed by defendants and the intervenor on such grounds as that plaintiffs lack standing, that they have not exhausted the state remedies, and further that the case warrants abstention. These contentions are found to be without merits.

No exhaustive discussion of the evolving law of standing is needed to demonstrate that plaintiffs have asserted the required claim of injury in fact to an interest arguably within the zone of interest to be protected or regulated by the Milk Regulating Act which they claim the defendants are not properly carrying out. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The daily additional costs

of fresh milk for resale or for personal consumption is certainly a claim of injury in fact. Even if plaintiffs were not the primary intended beneficiaries of the statute which they claim the defendants' actions violate, they need only be intended beneficiaries to have standing. Constructores Civiles de Centroamerica, S.A. v. Hannah, 148 U.S.App.D.C. 159, 459 F.2d 1183 (1972); Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970); Local 2677 American Fed. of Gov. Emp. v. Phillips, D.C., 358 F.Supp. 60 (1973).

■■ This suit clearly falls within the exception of the doctrine of exhaustion of local remedies, as it is brought against officials who have allegedly acted beyond the statutory powers or have exercised their statutory powers in a constitutionally void manner. Plaintiffs are not seeking a determination that the Milk Industry Regulating Act is unconstitutional. What the plaintiffs do demand is that defendants be enjoined from acting in a manner which violates their statutory duties under the Act, or that they be declared to be acting unconstitutionally. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Glenwal Development Corp. v. Schmidt, D.C., 336 F. Supp. 1079 (1972). Furthermore, a letter sent to defendants by counsel for plaintiffs which was taken as a request for reconsideration of their decision to promulgate the amendment to Regulation No. 1 of the Milk Industry, now under attack, was flatly rejected; and because of the specific anti-injunction provision of the statute, it can be said that the administrative remedies were exhausted and that the judicial remedies are inadequate in spite of the decision rendered by the Supreme Court of Puerto Rico on September 11, 1973 in the case of Ortega Cabrera v. Superior Court, supra. Alabama Public Service Commission v. Southern Railway, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

■ Aside from the fact that the abstention doctrine has been held not to apply when civil rights are involved in a case (Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22), lack of adequate state remedies, and even if adequate, the delay which reinitiation of the action would entail, would be sufficient reason to reject the application of the doctrine of abstention. Marín v. U. P.R., D.C., 346 F.Supp. 470 (1972). Since an action to review defendants' action has been initiated before the Superior Court of Puerto Rico by other plaintiffs represented by the same attorneys as plaintiffs in this case, we deem it necessary to further hold that the doctrine of abstention does not depend upon whether a complaint is filed before the local courts. Wackenhut Corp. v. Aponte, D.C., 266 F.Supp. 401 (1966).

### Challenge to Administrative Actions

Plaintiffs challenge the defendants' actions as being arbitrary and capricious and in excess of their authority. Their specific charges have been enumerated at pages five and six of this Opinion.

■ As expressed in Pacific Coast Meat Jobbers Association, Inc. v. Cost of Living Council, 481 F.2d 1388, Temporary Emergency Court of Appeals (1973) the burden which must be borne by the plaintiffs in order to obtain injunctive relief is not a light one; and in our opinion, they have not made the showing necessary to entail them to full injunctive relief. We hold that they have failed to show arbitrary and capricious conduct on the part of defendants even though defendants are to be censured for their failure to consult the Advisory Board of the Milk Industry Regulation Office, merely because their members are "holding over" from the last administration. The defendants, with the exception to be noted further on, have not gone beyond the statutory limitations of the Milk Industry Regulating Act.

■ The fact that the authorized increases directly benefit the producers

does not establish exclusivity of benefits. If the statutory policy is obtained, all sectors of the milk industry will benefit, and, presumably, even plaintiffs and all milk consumers. There was evidence to show that producers were being adversely affected by increases in the costs of production and that this is where remedial measures are being directed.

■ The evaluation made by the Administrator and the study made by the Experimental Station, reveal that the problems affecting the milk industry were thoroughly studied and that a decision was reached on the basis of valid conclusions from all available data. Since the Milk Regulating Act specifically gives them the power, as a matter of public policy, to determine the price of milk in any of the channels and levels of distribution, and the increase in the price of milk was authorized in furtherance of the statutory goals, we cannot say that defendants' decision was erroneous. In upholding defendants' actions, this Court is not deciding that such actions are the only reasonable method of attaining the statutory objectives. In a case such as this, the judicial function terminates when there is found to be a rational basis for the actions of the administrative body, for it is not within the power of the Court to fashion regulations. Pacific Coast Meat Jobbers Association, Inc. v. Cost of Living Council, supra. Those who suffer through alleged insufficiency or lack of judgment of administrative officers, must seek their remedy by the ballot. Konieczny v. Streeter, 182 Misc. 376, 43 N.Y.S.2d 820.

On the other hand, although administrative agencies have ample latitude within which to ascertain conditions and make determinations calling for the exercise of judgment or even formulation of subsidiary administrative policy, they must remain within the prescribed statutory framework. Accordingly, administrative bodies may not enlarge the scope of a statute or extend or disregard its requirements. They cannot add to their own powers by their own acts or by any process of construction, or by asserting the existence of an emergency. This Court would gladly defer to the interpretation given a statute by the agency charged with its administration; Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), but in this case, there is little room for interpretation since the agency rule making power is limited by statutory requirements.

■ The Milk Industry Regulating Act specifically provides that the price of fresh milk will be fixed by the Administrator and the Secretary of Agriculture; and further requires of them, in exercising such power, to take into consideration all the factors specified in the same and to hold public hearings before promulgating any regulation or amendments to any regulation (5 L.P.R.A. 1103(b), (d)). In establishing a mechanism to provide for automatic changes in the price of milk according to the changes that the Secretary of Consumers Affairs may adopt in the price of animal feed, the Secretary of Agriculture is unlawfully delegating the power given him by the Act, for in essence, it is the Secretary of Consumers Affairs the one who will be fixing the price of fresh milk. Furthermore, each change in the price of fresh milk will be adopted without the prior holding of public hearings and taking into consideration no other factors than the cost of animal feed.

No matter how favorably we would like to look at the efforts made by the Secretary of Agriculture and the Administrator of the Milk Industry to maintain the price of fresh milk in a flexible statute, we must always conclude that such a device is illegal. The Secretary and the Administrator are not to be blamed for trying to improve their administration by adopting imaginative and dynamic ideas, for the work of modern managers cannot be carried on with

methods and procedures established by old statutes. Alterations in our economic life have created new problems for those charged with managing the business of government. These problems call for new legislation that will permit the implementation of new procedures, methods and practices, but until the same are adopted, the Courts have to interfere.

An appropriate order will be entered with this Opinion granting plaintiffs' petition for injunctive relief but limited to the unlawful delegation made by the Secretary of Agriculture to the Secretary of Consumers Affairs of his statutory power to fix the price of fresh milk as of October 1, 1973, and the mechanism created for the automatic changes of the same from that date on.

### ORDER

This case having come before the Court for hearing on plaintiffs' request for a preliminary injunction, and the parties having stipulated pursuant to the provisions of Rule 65(a)(2) of the Federal Rules of Civil Procedure for the consolidation of the trial on the merits of the case, with said hearing for a preliminary injunction, and the Court after due consideration of all the evidence presented and having heard argument of counsel, for the reasons stated in the Opinion filed in this case, it is this 15th of October, 1973 ordered:

That plaintiffs' action for damages is hereby denied and their petition for a permanent injunction is hereby granted to the extent hereinafter ordered, adjudged and decreed;

Further ordered that such provisions of the amendments to the Milk Regulation No. 1 approved on August 28, 1973, directing, providing for or intending to accomplish an automatic adjustment of the price of fresh milk according to the price of animal feed as determined by the Secretary of Consumers Affairs from October 1, 1973 on, is unauthorized by law, illegal and in excess of statutory authority;

Further ordered, adjudged and decreed that all instructions and other communications, written or oral heretofore published, promulgated or otherwise communicated, directing, providing for or intending to implement said automatic adjustment of milk price according to the price of animal feed as determined by the Secretary of Consumers Affairs from October 1, 1973 on, are null and void, whether such instructions and communications be those of defendants or any agent, servant, employee or other person acting in concert with the defendants, or otherwise employed by or purportedly acting for or on behalf of the Department of Agriculture and/or the Milk Industry Regulation Office of the Commonwealth of Puerto Rico.

### ON MOTION FOR STAY

Defendants have moved to stay the injunction order entered by this Court, pending appeal. After the hearings held last Thursday and Friday, and upon due consideration of all arguments advanced, it is the opinion of the Court that if such a stay were to be granted it should remain in effect only as long as it does not result in an increase in the price of fresh milk above the actual level. Plaintiffs, of course, agree with this solution; defendants undoubtedly pursue the same objective, and understandably, the producers only demand that they be protected in case there is such an increase above the actual level.

The purpose of the provisions of Rule 62(c) of the Federal Rules of Civil Procedure which authorize the suspension of an injunction during the pendency of an appeal is to preserve the status quo when the circumstances so justify. It appears that the requested suspension would have the immediate effect of benefiting the consumers since the price of animal feed has admittedly been slightly reduced; however, there is always present the danger of a sharp increase in the price of animal feed and the resulting increase in the price of fresh milk without the benefit of a public hearing and consideration of other fac-

tors, as required by statute. An unconditional stay of the injunction order would be a complete reversal of our opinion holding that the mechanism for automatic adjustment of the price of fresh milk according to the price of animal feed as determined by the Secretary of Consumers Affairs, is completely unauthorized by law, illegal and in excess of statutory authority, and completely unnecessary when defendants could very well proceed to set a lower price on fresh milk by complying with the statutory proceedings.

In our opinion, the status quo to be preserved is not the status as it was at the time the action was filed, but rather as it was before the Secretary of Agriculture and the Administrator of the Milk Industry issued the resolution authorizing an additional compensation at the producers' level in lieu of the subsidy the Commonwealth Government had been paying the producers of feed for cattle (see our Finding No. 17 of our Opinion filed on October 15, 1973).

Therefore, it is ordered that defendants' motion for an unconditional stay of our injunction order is denied. Such a stay will be granted only upon condition that defendants post a bond or give any other acceptable guaranty to insure, through payments to the producers, that the price of milk will not exceed the actual level.

It is further ordered that since the instant case involves issues of some difficulty, our injunction order interferes with actions taken by high level officers of the state's executive branch, and no variation will occur in the price of fresh milk until the end of the month, I deem it advisable to grant defendants' request for a stay for several days, until November 25, 1973, so that they may present their request for an unconditional stay pending appeal before the United States Court of Appeals for the First Circuit, if they deem it so advisable.

It is so ordered.