Ralph NADER and Carl Nash,
Plaintiffs-Appellants

and

Lefrak Organization, Inc.,
Intervenor-Appellant,

v.

John C. SAWHILL et al.,
Defendants-Appellees.

No. DC–31.

Temporary Emergency Court
of Appeals.

April 11, 1975.

Alfred L. Singer, Washington, D. C. (Alan B. Morrison, Washington, D. C., with him on the brief), for appellants.

Stanley R. Wolfe, Philadelphia, Pa. (David Berger, P.A., Philadelphia, Pa., of counsel), for intervenor-appellant.

C. Max Vassanelli, Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., New York City, Stanley D. Rose, Washington, D. C., on the brief), for appellees.

Before TAMM, Chief Judge and HASTIE and ANDERSON, Judges.

TAMM, Chief Judge:

Plaintiffs-appellants Ralph Nader and Carl Nash initiated this action in the District Court for the District of Columbia, challenging the Cost of Living Council's (CLC) December 19, 1973 one dollar per barrel increase to the allowable price of "old" crude oil. District Court Judge Gesell held that CLC's decision was founded upon a rational basis, was not procedurally infirm, and accordingly, granted summary judgment for CLC's successor, defendant-appellee Federal Energy Administration (FEA). We affirm.

On December 19, 1973, CLC, without a hearing, amended its Phase IV price regulation covering domestic crude petroleum to permit an immediate one dollar per barrel increase to the maximum ceiling price charged for "old" oil. 38 Fed. Reg. 34985–86 (Dec. 21, 1973). CLC articulated two basic reasons for its action.

First, it maintained that the increase was in furtherance of its stated policy to "monitor the ceiling prices on domestic crude petroleum and . . . to make periodic upward adjustments in the ceiling price toward the higher world prices for crude petroleum." *Id.* at 34985. After briefly describing the situation confronting it—a "very wide spread between domestic crude prices and world crude prices," and a two to four dollar spread between the price of "old" and "new" domestic crude within its two-tier pricing system of regulation—CLC advised that "[s]preads of this magnitude are potentially de-stabilizing and cannot long be maintained." *Id.* Second, CLC observed that while the increase "can be expected to generate only marginal increments to crude supply in the short run, . . . [it] will create additional incentive for the petroleum industry to pursue further research and developments efforts, new exploration and new technology to augment our energy resources." *Id.* In closing, CLC specifically found that "[b]ecause the purpose of these amendments is to provide immediate guidance and information with respect to the decisions of [CLC], . . . publication in accordance with normal rulemaking procedures is impracticable and . . . good cause exists for making these amendments effective in less than 30 days."[1] FEA, CLC's successor with respect to its energy authority under the Economic Stabilization Act,[2] has adopted the regulation as amended by CLC. *See* 6 C.F.R. § 150.353 (1974).

On July 9, 1974, appellants filed this action in district court, seeking declaratory and injunctive relief.[3] Appellants

---

1. 38 Fed.Reg. 34986. *See* 5 U.S.C. § 553 as made applicable to CLC rulemaking proceedings by section 207 of the Economic Stabilization Act, 12 U.S.C. § 1904 (note) (Supp. III, 1973).

2. 12 U.S.C. § 1904 (note (1970), as amended, (Supp. III, 1973). For a more detailed chronology of this transition see Consumers Union, Inc. v. Sawhill, 512 F.2d 1112 at 1122 (Em. App., 1975) (Tamm, C.J., concurring and dissenting op.).

3. Judge Gesell correctly noted that: "Although the Economic Stabilization Act of 1970, as amended, (12 U.S.C.A. § 1904 note, 87 Stat. 62), expired April 30, 1974, the Court has jurisdiction over this action filed in July, 1974, against the then-Administrator of the Federal Energy Administration, successor to the Cost of Living Council, by reason of Section 218 of the Act which authorizes expiration but preserves any action or proceeding based upon any act committed prior to May 1, 1974." Nader v. Sawhill, 387 F.Supp. 1208 (D.D.C. 1974), J.A. 105.

broadly attacked CLC's amendment of the regulation and FEA's subsequent adoption of it as "arbitrary, capricious, an abuse of discretion, in excess of statutory authority, without observance of procedure required by law, and otherwise not in accordance with law, within the meaning of 5 U.S.C. § 706(2) . . . ." Nader v. Sawhill, Civil No. 74–1025, complaint, ¶ 23 (D.D.C., filed July 9, 1974), J.A. 9. To bolster their allegations, appellants submitted copies of CLC memoranda utilized in its decision to amend the regulation.[4] Relying upon these memoranda, appellants asserted that CLC's reasons for the price increase were insufficient because

> (i) the price spreads referred to in the statement of reasons posed no significant threat to any national interest cognizable by the CLC under the Economic Stabilization Act, and (ii) even if such a national interest was threatened by said price spreads, it could have been protected by the taking of other actions that would have been more efficacious and far less injurious to plaintiffs and other consumers than the price increase   .   .  ..

Nader v. Sawhill, *supra*, Civil No. 74–1025, Complaint, ¶ 23(a), J.A. 9–10. Lastly, appellants argued that CLC's amendment and FEA's adoption of it were procedurally defective because of the absence of formal hearings and prior notice or opportunity for public comment. *Id.* at 10.

To rebut appellants' assertions, extensive expository affidavits were filed by CLC's former Director, John T. Dunlop, its former General Counsel, William N. Walker and FEA's Deputy Assistant Administrator for Policy Integration and Evaluation, Bert M. Concklin.[5] The affidavits reiterated the reasons originally announced by CLC when it issued the amendment to the regulation and detailed the economic considerations supporting those reasons. For example, former Director Dunlop, noting the portentous prospect of decontrol in light of the price spread between domestic oil and foreign oil, explained that "[t]he severe consequences of a 'one-shot' increase in crude oil prices at the end of controls, which would contribute to the inflationary spiral, were hoped to be avoided by a step-by-step process whereby small increases would be spread out over a period of time." J.A. 34. Additionally, he observed that CLC "had reason to believe that the increase in the ceiling price of old oil would serve to improve crude supplies," which was of "continuing concern" to CLC in view of our country's vulnerable reliance upon imported petroleum. J.A. 35–36. Beyond these two basic reasons, Mr. Dunlop also noted CLC's concern that the growing price spread increased the temptation "for producers to 'cheat' the system." J.A. 35. Concerning CLC's departure from normal rulemaking procedures, Mr. Dunlop confirmed CLC's determination that the decision

> had to be made promptly and without advance notice of the price change. For in addition to the need for immediate action to provide production in-

---

4.  The memoranda had been released by CLC pursuant to a request made under the Freedom of Information Act by an associate of appellant Nader and were subsequently reprinted in the Congressional Record. 120 Cong.Rec. 10178–83 (daily ed. June 10, 1974), J.A. 13–18.

5.  J.A. 23–39, 45–54, 91–95, 96–100. In December, 1973, CLC members were: Chairman, the Secretary of the Treasury, George P. Shultz; Vice-Chairman, the Chairman of the Council of Economic Advisors, Herbert L. Stein; Director, John T. Dunlop; the Secretary of Agri-

culture, Earl L. Butz; the Secretary of Commerce, Frederick B. Dent; the Secretary of Labor, Peter J. Brennan; the Secretary of Housing and Urban Development, James T. Lynn; the Secretary of Health, Education, and Welfare, Caspar W. Weinberger; the Director of the Office of Management and Budget, Roy L. Ash; the Special Assistant to the President for Consumer Affairs, Virginia H. Knauer; and the Counsellor to the President, Anne Armstrong. The Chairman of the Board of Governors of the Federal Reserve System, Arthur Burns, served as an advisor to CLC. J.A. 23–24.

centives to domestic producers in view of the Arab oil embargo, to have given crude producers thirty-days notice of a price advance would quite naturally have affected adversely sales and deliveries during this difficult period of supply.

J.A. 39. The remaining affidavits were in full accord with and complemented Mr. Dunlop's explanation.

On cross-motions for summary judgment, Judge Gesell held that:

> There is clearly a rational basis for the conclusions conscientiously and deliberately arrived at and it is of no consequence that others could have reached a different decision or decided to follow a different approach based on a different economic analysis. . . . The knowledge of past regulatory efforts and their purpose and effect and shifts in supplies affecting the price structure were all properly weighed and the standards governing the action under 203(a) of the Economic Stabilization Act were given proper consideration.

Nader v. Sawhill, 387 F.Supp. 1208 (D.D.C., 1974), J.A. 105–06. As to the procedural challenge, Judge Gesell held that, under decisions of this court, Mr. Dunlop's and Mr. Walker's explanations of the situation sufficed to meet the requirements of section 207 of the Economic Stabilization Act and 5 U.S.C. § 553, in that "[a]n emergency matter was presented which required immediate

action and hearings were not possible." *Id.* at 1209, J.A. 106–07. Thus, summary judgment was granted in favor of FEA, and the complaint was dismissed.

Appellants' arguments on appeal are essentially those previously presented to the district court. They again argue that the decision to increase the price of "old" domestic crude was arbitrary and capricious, 12 U.S.C. § 1904 (note) § 211(d)(1) (Supp. III, 1973) —an abuse of agency discretion, 5 U.S.C. § 706(2)(A) (1970). Initially, we note that the Supreme Court has most recently reaffirmed its characterization of this standard, which governs our review here, as "a narrow one":

> A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, *supra*, 401 U.S. at 416, 91 S.Ct. at 824. The agency must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207.

Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).[6] Given the record before us, we

---

**6.** Regarding the precise basis for an agency's action, the Court stated the well-settled doctrine that: "While we may not supply a reasoned basis for the agency's action *that the agency itself has not given,* SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206." 419 U.S. at 285–86, 95 S.Ct. at 442 (emphasis added). On this basis, appellants assert that portions of the expository affidavits filed with the district court present "new" justifications for the price increase, and thus should be disregarded. Ap-

pellants' Br. at 6–7. We have previously sanctioned the use of such affidavits, *see, e. g.,* Pacific Coast Meat Jobbers Ass'n, Inc. v. Cost of Living Council, 481 F.2d 1388 (T.E.C.A. 1973); Plumbers Local Union No. 519 v. Construction Indus. Stabilization Comm., 479 F.2d 1052 (T.E.C.A.1973), and again affirm that position and note its particular relevance to cases, as the case *sub judice,* where the reviewing court does not have the benefit of a detailed administrative record developed in the course of normal rulemaking procedures. In any event, as will become apparent *infra,* our decision today does not rest on the "new justifications."

are constrained to agree with the district court that there is a sufficiently rational basis for the price increase to withstand our review.

While the decision to implement the price increase may not have evolved from the type or quantum of economic analysis that appellants would require, our examination of the record reveals that economic considerations were in fact studied, alternatives weighed, and consequences debated. *See, e. g.*, J.A. 13–18, 31–38, 97–99. Although we cannot characterize the record as replete with complex economic analysis, we think that it is sufficient to pass muster under the rubric of "arbitrary and capricious". In view of the very real prospect of decontrol, it was not irrational for CLC to seek to "close the spread" between the price of "old" domestic crude and world prices. Reams of economic analysis are certainly not necessary to appreciate the inflationary impact of a sizable "one-shot" increase in the price of a commodity as ubiquitous and indispensable as petroleum. J.A. 101–102. We also think that CLC's second reason for the increase, to provide additional incentive for the private sector to augment supply, is sound. That an increase in supply can be expected to result from an increase in price is simply a recognition of the traditional functional relationship between price and supply. Indeed, the record in this case indicates that favorable supply results were in fact achieved by the increase. J.A. 75–79. Thus, we do not accept the thrust of appellants' argument that "CLC simply failed to engage in a reasoned exercise of agency discretion." Appellants' Br. at 7.

■ Appellants' argument concerning the procedural issue is two-fold. "[A]s a preliminary matter", they contend that the decision not to adhere to normal rulemaking procedures "was not an agency decision at all, but rather a unilateral determination made by the CLC General Counsel William Walker, who failed to communicate his advice to the Council." Appellants' Br. at 17. We think appellants have simply misinterpreted the record, for the affidavits upon which they rely to support this conclusion make clear that the decision was CLC's, not Mr. Walker's. J.A. 39, 99–100.

■ Appellants' primary procedural argument is that CLC did not make an adequate showing of "good cause" to dispense with the procedural requirements of 5 U.S.C. § 553.[7] Initially, we agree with appellants that if CLC's conclusory statement that normal procedures were not followed because of the need "to provide immediate guidance and information with respect to the decisions of the Council," 38 Fed.Reg. 34986, "constitutes 'good cause', then an exception to the notice requirement would be created that would swallow the rule." Appellants' Br. at 19. Thus, as appellants contend, our inquiry cannot end here. Nonetheless, without dwelling at length on the issue, we think good cause was present in this case based upon CLC's concern that

the announcement of a price increase at a future date could have resulted in producers withholding crude oil from the market until such time as they could take advantage of the price increase. In view of the shortages beginning to be felt as a result of the [Arab] embargo and the even more critical shortages expected in the near future, it was believed that any action which might aggravate the shortage situation should be avoided to the maximum extent possible.

J.A. 93. That this reasoning was not expressed by CLC with its announcement of the increase is but a technical violation of normal procedures, which we do not think warrants reversal, considering the expeditious nature of the proceedings and that good cause in fact was

---

7. *See* note 1 *supra*, and accompanying text.

present. *See, e. g.,* California v. Simon, 504 F.2d 430, 439–40 (T.E.C.A.), cert. denied, 1021 U.S. 419, 95 S.Ct. 496, 42 L.Ed.2d 294 (1974); DeRieux v. Five Smiths, Inc., 499 F.2d 1321, 1332–33 (T.E.C.A.), cert. denied, 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). However, we warn that repeated technical noncompliance will not be tolerated. Moreover, we stress categorically that our resolution of the procedural issues herein is founded upon the unique circumstances in which *this* price increase was formulated. Assuming less calamitous circumstances, we fully expect that any future decisions will take the utmost advantage of full and open public comment.

Affirmed.