**LAKES GAS COMPANY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY and Charles Duncan, Secretary of Energy, Defendants.**

Civ. 4–79–389.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 4, 1979.

William R. Busch, St. Paul, Minn., for plaintiff.

Thorwald H. Anderson, Jr., U. S. Atty., Stephen Palmer, Minneapolis, Minn., and Mary A. McReynolds, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Plaintiff challenges the validity of a Remedial Order issued by the Department of Energy on June 11, 1979, which order directs plaintiff to return to the market approximately $103,000 in alleged overcharges. Plaintiff seeks a preliminary injunction enjoining the enforcement of the remedial order as well as an injunction enjoining the enforcement of the "equal application rule," 10 C.F.R. § 212.93(e). Plaintiff also seeks declaratory relief declaring the equal application rule void for failure to follow the proper procedures in passage of that rule.

Declaratory and injunctive relief is granted, subject to the limitations set forth below.

*Background*

Plaintiff is a propane gas retailer subject to the ceiling price regulations in 10 C.F.R., Part 212, Subpar. F, (10 C.F.R. § 212.31 (1978)). The substance of plaintiff's claim is that the equal application rule is void for failure to follow the required procedure in promulgating that rule.

The equal application rule is an amendment to the ceiling price regulations, 10 C.F.R. § 212.93, which regulations provide, in sum, that a retailer may charge a price

equal to the weighted average market price on May 15, 1973, plus any product cost increases since that date. The regulations, permitted a retailer to "bank" the product cost increases which were not passed through to a particular class of purchaser. A retailer could recoup the "banked" product cost increases by using the product cost increases which were not passed through to compute its new ceiling prices.

Prior to the promulgation of the equal application rule, the ceiling price regulations permitted the retailer to bank product cost increases which were not passed through to one class of purchaser even though the full product cost increase had been passed through to another class of purchaser. As supply increased, the market price was, in some instances, forced below the ceiling price, which resulted in retailers not passing through the total product cost increases to certain classes of purchasers. The effect of the regulation was that it permitted a change in the relative price differentials among various classes of purchasers, as they existed on May 15, 1973. The equal application rule was designed to remedy that.

The equal application rule provides, in substance, that the largest product cost increase passed through to a particular class of purchaser for a specific product will be deemed to have been passed through to each class of purchaser, for purposes of computing the product cost increases the retailer could bank. The effect of the rule is that whereas, previously, a retailer, who passed through product cost increases to only some classes of purchasers, could bank the cost increases which were not passed through to other classes of purchasers; under the equal application rule, since a cost increase to one class of purchaser would be deemed to have been passed through to all classes of purchasers, the retailer could not bank the product cost increases which were not passed through. The purpose of the equal application rule was to encourage re-

tailers to maintain the price differentials among various classes of purchasers as they existed on May 15, 1973.

The alleged overcharges plaintiff was directed to remit to the market resulted, at least in part, from computing plaintiff's ceiling prices in light of the equal application rule for the time period of November 1973 to June 1975.

The Federal Energy Administration (FEA) promulgated the equal application rule without providing an opportunity for comment, upon a finding that doing so "would be injurious to the public welfare." The FEA finding was based on the belief that the combined effect of an increased gas supply and highlighting the ambiguity in the price regulation, caused by the notice and comment procedure, would result in an increased number of sellers varying their prices among different classes of purchasers, thereby changing the relative price differentials among classes of purchasers as they existed on May 15, 1973.

*Law Applicable*

It is clear that the rulemaking provisions of the Administrative Procedure Act, (APA) 5 U.S.C. §§ 551–559, apply to the FEA and its successor agency, the Department of Energy[1] (DOE), 15 U.S.C. § 766(i)(1)(A); that the equal application rule is a "rule" as defined in 5 U.S.C. § 551(4); and that the Federal Energy Administration Act (FEAA), 15 U.S.C. § 761 et seq., sets forth rulemaking procedural requirements in addition to those set forth in the APA, 15 U.S.C. § 766(i)(1)(A), (B) and (C).

The APA, provides that notice of the proposed rule be published in the Federal Register and that interested persons be given an opportunity to comment on the proposed rule. 5 U.S.C. § 553(b), (c). Interpretative rules are exempt from the notice and comment procedures. 5 U.S.C. § 553(b)(A). The issuance of rules is also exempt from

---

1. The FEA became part of the DOE on October 1, 1977. Pub.L.No. 95–91, § 301(a), 91 Stat. 565; Exec.Order No. 12009, 42 Fed.Reg. 46267 (Sept. 15, 1977). Because the equal application rule was promulgated prior to the creation of the DOE the defendant is referred to as the FEA.

the notice and comment procedure where "the agency for good cause finds . . . [such procedures] . . . impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

The FEAA provides that the proposed rule itself be published in advance and that at least 10 days be provided for an opportunity to comment. 15 U.S.C. § 766 (i)(1)(B). In addition, where rules are ". . . likely to have a substantial impact on the Nation's economy or large numbers of individuals or businesses, . . ." an opportunity for *oral* comment must be provided, 15 U.S.C. § 766(i)(1)(C) (emphasis added). That opportunity must be provided, to the maximum extent possible, prior to the promulgation of the rule and in no event later than 45 days after the issuance of the rule. *Id.* The notice and comment procedure may be waived only upon a finding that "strict compliance [would] cause *serious harm or injury to the public health, safety or welfare* . . ." 15 U.S.C. § 766 (i)(1)(B) (emphasis added). The finding of serious harm or injury must be set out in detail in the rule. *Id.*

The provisions of the FEAA are more stringent than those of the APA in that the FEAA requires publication of the rule, as opposed to merely publication of the terms or substance of the rule, and that the notice and comment procedures may be waived under the FEAA only upon a finding of serious harm or injury to the public welfare, whereas under the APA, the agency need only find that notice and comment are impracticable, unnecessary or contrary to the public interest.[2]

The determinative issues in this case are: 1) whether or not the equal application rule is legislative or interpretative; and 2) if it is legislative, whether or not the agency's finding of a "serious harm or injury to the public welfare" is sufficient to exempt the issuance of the rule from the notice and comment procedure.

*Legislative/Interpretative*

The test to be applied in determining whether a rule is legislative or interpretative is subject to conflicting views. Professor Davis argues that the delegated powers of an agency and the agency's expressed intent in promulgation of the rule are the only relevant factors in making the legislative/interpretative distinction. Thus, if an agency is delegated authority to make law through rulemaking, the agency may issue legislative or interpretative rules. The intent of the Agency in promulgating the rule is determinative of the issue. Kenneth C. Davis, Administrative Law of the Seventies, (Supplementing Administrative Law Treatise) § 5.03 at 147–48 (1976), (hereinafter cited Davis). Under the Davis theory the impact of the rule is not relevant in making the legislative/interpretative determination. Davis, § 5.03–2 at 156; supplement § 5.03 at 9 (1978).

The case law, however, generally holds that the primary focus of inquiry in making

---

2. In addition the FEAA appears to subject *all* rules, including interpretative rules, to the notice and comment procedure. Title 15 U.S.C. § 766(i)(1)(A) provides that "subject to paragraph (*B*), (C) and (D) of this subsection, [the APA provisions governing the promulgation of rules] shall apply to *any* rule. . . ." (emphasis added). (Paragraph (B) provides, "Notice of *any* proposed rule, . . . described in paragraph (A) shall be given by publication . . . ." (emphasis added). The APA exempts interpretative rules from the notice and comment procedure, "*[e]xcept* when notice or hearing is required *by statute,* . . ." 5 U.S.C. § 553(b) (emphasis added).

Such an interpretation is supported by the legislative history of the FEAA which states that,

[t]his subsection applies, with modifications, Administrative Procedure Act provisions not only to rules and regulations, but also to orders similar to a rule or regulation. This reflects the conferees' intent that the Administrator *should provide notice and opportunity for comment whenever his proposed action could have an impact on more than the few persons who, in the absence of such public notice, would be likely anyway to receive personal notice of the proper action.* (emphasis added). Conference Report No. 93–788 reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 2972, 2977. However, because the court finds the equal application rule to be a legislative rule, thereby subjecting it to the notice and comment procedure of the APA, as well as the FEAA we need not decide that issue.

the legislative/interpretative distinction should be the effect of the rule. If the rule has a "substantial or significant impact" on parties the rule is legislative and therefore subject to the notice and comment provisions; the characterization by the agency is not determinative. *See, e. g., Standard Oil Company v. Department of Energy,* 596 F.2d 1029, 1061–62, (Em.App.1978); *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 482 (2d Cir. 1972); *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3d Cir. 1969), *Reynolds Metals Company v. Rumsfeld,* 417 F.Supp. 365, 372 (E.D.Va. 1976), *cert. den.* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84; *Saint Francis Memorial Hospital v. Weinberger,* 413 F.Supp. 323, 329 (N.D.Cal.1976); *Pharmaceutical Manufacturers Ass'n v. Finch,* 307 F.Supp. 858, 863–64 (D.Del.1970). The Eighth Circuit has adopted the substantial impact test. *American Bancorporation, Inc. v. Board of Governors of Federal Reserve System,* 509 F.2d 29, 33 (8th Cir. 1974) (citing cases). Since the equal application rule is a legislative rule under either test, the court need not rest its decision solely on either test.

■ The FEA had the authority to promulgate legislative rules concerning the pricing and allocation of fuels.[3] In promulgating the equal application rule the FEA intended to exercise its legislative authority as evidenced by the fact that it expressly sought to rely on the exception to the notice and comment procedures. Thus, the rule is a legislative rule under the Davis test.

The rule also has a substantial impact on fuel retailers and resellers. The rule introduced a new method of computing product cost increases which could be "banked." It had the effect of restricting the cost increase which could be 'banked" in those instances where the market price fell below the ceiling price. For examples of what

constitutes "substantial impact" thereby requiring a notice and comment procedure, *see, e. g., Standard Oil Company, supra,* (rule requiring recoupment of product cost increases prior to non-product cost increases has substantial impact); *Lewis-Mota, supra,* (rule abolishing pre-certification of aliens thereby making it more difficult for aliens to enter has substantial impact); *Texaco, Inc., supra,* (rule requiring gas company to pay interest compounded "monthly," as opposed to "annually," on refunds ordered by Federal Power Commission has substantial impact); *Saint Francis Memorial Hospital, supra,* (regulation requiring interest expenses to be capitalized rather than expensed has substantial impact).

Since the equal application rule is a legislative rule therefore requiring notice and comment, the only issue remaining is whether the waiver of the notice and comment procedure was proper in this case.

*Waiver of Notice and Comment:*

■ Title 15, Section 766(i)(1)(B) provides that the notice and comment procedure can be waived "where strict compliance is found to cause serious harm or injury to the public health, safety, or welfare . . . ."[4] The FEA expressly relied on that exception in issuing the equal application rule. 39 Fed. Reg. 32306, 32307 (1974). In doing so the FEA found "that an emergency exists" which "would be injurious to the public welfare." *Id.* It based that finding on the conclusion that the combined effect of increased fuel supply and highlighting of the existing ambiguities in the price regulation—caused by the notice and comment procedure—would increase the number of resellers selling at different prices to various classes of purchasers and thereby disturb the May 15, 1973 relative price differentials. The court finds that such is not sufficiently serious harm or injury to the

---

**3.** The FEA received its authority from its predecessor the Federal Energy Office pursuant to Executive Order No. 11790 (June 25, 1974). The FEO was delegated authority to regulate fuel prices by Executive Order No. 11748 (Dec. 4, 1973) which order transferred to the Administrator of the FEO the authority vested in the President by, among other statutes, the Eco-

nomic Stabilization Act of 1970, 12 U.S.C. § 1904 note, and the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751, et seq.

**4.** This provision has since been redesignated. 42 U.S.C. § 7191(e) as a provision of the Energy Reorganization Act.

health, safety and welfare, to except it from the notice and comment procedure.

There is limited case law under the 15 U.S.C. § 766(i)(1)(B) exception. However, the case law under the analogous provision of the APA is helpful. The case law and the legislative history indicate that the exception to the notice and comment procedure was to be used sparingly.

Persuasive dicta in *Nader v. Sawhill*, 514 F.2d 1064 (Em.App.1975) is instructive on the issue of when an agency may waive the notice and comment. In *Nader* consumers brought suit challenging a rule permitting an immediate price increase of $1 per barrel on "old" crude oil. The rule was promulgated without notice and opportunity to comment. The Emergency Court of Appeals found that good cause existed justifying a waiver of the notice and comment procedure and did so on a finding of the immediate need for crude oil due to the Arab embargo, and upon a recognition that notice of a pending price increase would inhibit the production of "old" crude until the price increase became effective. The court, however, warned,

> . . . that repeated technical noncompliance will not be tolerated. Moreover, we stress categorically that our resolution of the procedural issues herein is founded upon the unique circumstances in which *this* price increase was formulated. Assuming less calamitous circumstances, we fully expect that any future decisions will take the utmost advantage of full and open public comment.

514 F.2d 1064, 1069. (Court's emphasis.)

The case law generally echoes the dictum of *Nader*, permitting a waiver of the notice and comment procedures only where there is an immediate need for the regulation to avoid severe adverse economic consequences. Compare, *Tasty Baking Co. v. Cost of Living Council*, 529 F.2d 1005 (Em. App.1975) (need for removing stringent price freeze under Phase I without removing all controls during interim period not sufficient good cause to justify waiver of the notice and comment procedure); and *Shell Oil v. Federal Energy Administration*, 440 F.Supp. 876 (D.Del.1977) aff'd 574 F.2d 512 (Em.App.1978) (notice and comment could not be waived to issue ceiling price regulations on unleaded gas even though need for such gas was immediate and only alternative was to put fuel on the market unregulated; the court noted that the agency could have foreseen the necessity for such regulations and therefore followed proper procedure); with *Texaco, Inc. v. Federal Energy Administration*, 531 F.2d 1071 (Em.App.1976) (severe economic dislocation throughout Puerto Rico caused by two tier pricing system was sufficient to meet the good cause requirement); and *DeRieux v. Five Smiths, Inc.*, 499 F.2d 1321 (Em.App.1974) (fear of immediate rush to increase all prices sufficient to justify waiver of notice and comment procedure in issuing price freeze). *See also*, Conf. Report No. 93–788, *supra*, n.2 at 2977 ("It is expected that the exception to the notice provision in paragraph (B) of section 7(i) of the conference substitute will be used very sparingly.").

The equal application rule was designed to induce resellers to maintain the May 15, 1973 price differentials. The rule penalized resellers for selectively reducing prices below the ceiling price. Though the rule had a good purpose, to maintain the May 15, 1973 price differentials among classes of purchasers, it undoubtedly had the negative effect of inhibiting selective price reductions below the ceiling price. The court holds that the immediate issuance of the rule was not necessary to avert such severe adverse economic consequences so as to justify waiver of the notice and comment procedure. Indeed, it is precisely in situations such as this, where a balancing of the effects of a rule is necessary, that the agency benefits most from the comment of those affected.

The equal application rule as set forth in 10 C.F.R. § 212.93(e) is declared void for failure to follow proper procedure in promulgating the rule. Defendant is enjoined from enforcing that rule against plaintiff until such time that the rule is properly promulgated.

It is not entirely clear which portion of the sum ordered to be remitted is attributable solely to the application of that rule. To the extent that the remedial order is based on the equal application rule, that order is void and unenforceable. Issues concerning the propriety of accounting methods and sufficiency of plaintiff's records are reserved pending further motion by the parties and receipt of the transcript of the hearing before the Agency.