671 F.2d 607
 217 U.S.App.D.C. 101
 NATIONAL FEDERATION OF FEDERAL EMPLOYEES and National
Association of Government Employees, Intervenor-Appellee,
v.
Donald J. DEVINE, Director, Office of Personnel Management,
et al., Appellants.
NATIONAL TREASURY EMPLOYEES UNION
v.
Donald J. DEVINE, Director, Office of Personnel Management,
et al., Appellants.
Christina B. KRYWUCKI, et al.
v.
Donald J. DEVINE, Director, Office of Personnel Management,
et al., Appellants.
GROUP HEALTH ASSOCIATION OF AMERICA, INC., on Behalf of 52
of Its Members
v.
Donald J. DEVINE, Director, Office of Personnel Management,
Appellant.
Robert H. WALKER, et al.
v.
Donald J. DEVINE, Director, Office of Personnel Management,
et al., Appellants.
NATIONAL TREASURY EMPLOYEES UNION
v.
Donald J. DEVINE, Director, Office of Personnel Management
Blue Cross Association and Blue Shield
Association, Appellants.
 Nos. 81-2224 to 81-2226, 81-2237, 81-2238 and 81-2251.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 10, 1982.
Decided Feb. 19, 1982.
 
 Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time brief was filed, and Royce C. Lamberth and R. Craig Lawrence, Asst. U. S. Attys., Washington, D. C., were on brief, for the Federal appellants. Anthony J. Steinmeyer and Eloise E. Davies, Attys., Dept. of Justice, Washington, D. C., entered appearances for the Federal appellants.
 Philip S. Neal, Washington, D. C., for appellants Blue Cross Ass'n and Blue Shield Ass'n.
 Catherine Waelder, Washington, D. C., with whom Bruce P. Heppen, Washington, D. C., was on brief, for appellee Nat. Federation of Federal Emp.
 R. Kenly Webster, with whom Martin D. Krall and Judith A. Sandler, Washington, D. C., were on brief, for appellee Group Health Ass'n of America, Inc.
 Robert M. Tobias, John F. Bufe, and William F. White, Washington, D. C., were on brief for appellee Nat. Treasury Emp. Union.
 James R. Rosa, Joseph F. Henderson and Kevin Grile, Washington, D. C., were on brief for appellees Christina B. Krywucki, et al.
 Raymond Malloy and Michael J. Crealy, Washington, D. C., entered appearances for intervenor-appellee Nat. Ass'n of Government Emp.
 Before ROBINSON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.
 Opinion for the court PER CURIAM.
 
 PER CURIAM:
 
 1
 Existing regulations require the Office of Personnel Management (OPM) to hold an "open season" annually in November and December to permit federal employees to transfer freely from one health benefit plan to another. On November 6, 1981 the Director of OPM announced that unforeseen emergency circumstances, including last-minute benefit reductions and pending litigation in federal courts, required postponement of the open season that had been scheduled to begin on November 9, 1981. The District Court granted a preliminary injunction on November 18, holding that OPM's action had been illegal and ordering an open season to begin on or before December 7. In these appeals we must decide whether the District Court correctly found that OPM's postponement decision violated the Administrative Procedure Act (APA). We reverse.
 
 I. FACTS
 
 2
 The Federal Employees Health Benefits Program (FEHBP), established by statute in 1960, gives employees a choice among a number of competing health plans in order to encourage the best possible service at the lowest cost. After an employee or retired annuitant has enrolled in a particular plan, the statute provides that he may transfer his enrollment from one participating plan to another "at the times and under the conditions prescribed by regulations" issued by OPM. 5 U.S.C. § 8905(e) (1976). The OPM regulations currently in effect permit such transfers to be made only during open season periods, which are to be held annually from the Monday of the second full work week in November through the Friday of the first full work week in December. 5 C.F.R. § 890.301(d) (1981).
 
 
 3
 Under this regulation the 1981 open season would have begun on Monday, November 9. On Friday, November 6, however, the Director of OPM issued FPM Bulletin No. 890-77, which postponed open season "to a time which will be announced hereafter, or to the applicable period during 1982 as determined pursuant to 5 C.F.R. § 890.301(d), whichever is earlier." Joint Appendix (JA) 114-115. The bulletin stated a number of reasons for the postponement. Accurate information regarding rates, benefits, and other terms of the 1982 health insurance plans was not available for distribution to employees because contract negotiations had not been completed until October 31, because substantial changes had been made in rates and benefits, and because several pending lawsuits in federal courts created uncertainty with respect to significant aspects of the 1982 program.[1] In addition, the bulletin asserted that the changes in benefit packages for 1982 were so substantial that "the stability of the FEHB program, the financial integrity of many of the plans, and the welfare of employees and annuitants would be threatened if, as the result of an immediate open season, the actuarial and economic data bases underlying the FEHB program were significantly altered." JA 114-115.
 
 
 4
 A few days later, on November 12, 1981, OPM published an interim regulation in the Federal Register, immediately effective, amending 5 C.F.R. § 890.301(d) to permit the Director of OPM to cancel or reschedule the annual November-December open season by issuing an FPM Bulletin. JA 118-119, 46 Fed.Reg. 55679-55680 (1981). The notice gave a brief statement of reasons, including the unavailability of accurate information concerning the 1982 plans and the uncertainty of terms caused by pending litigation. It also invited public comments for consideration in final rulemaking regarding rescheduling of open seasons in future years.
 
 
 5
 A number of health plan carriers and two individual federal employees filed suits in the United States District Court for the District of Columbia, alleging that OPM's failure to hold an open season as scheduled was a violation of the Administrative Procedure Act and a breach of their contractual rights. Plaintiffs sought declaratory and injunctive relief. After a hearing on the motion for preliminary injunction on November 16, 1981, the District Court issued a preliminary injunction on November 18, accompanied by a brief memorandum opinion. JA 36-47.
 
 
 6
 The District Court held that OPM had failed to demonstrate an emergency that would constitute "good cause" for postponement of open season without notice and comment under Section 553 of the APA. Recognizing that the exceptions to notice and comment procedures should be "narrowly construed and only reluctantly countenanced," JA 39, the court rejected the government's reasons for taking immediate action. Although printing delays precluded an opening date of November 9, 1981 for open season, the court decided, they did not justify an "indefinite postponement." Intervening defendant Blue Cross-Blue Shield had argued convincingly that open season might force it to withdraw from participation in the federal health benefits program, but the District Court attributed the problem solely to the recent 6.5 percent benefit cutback ordered by OPM. Because the court had decided in related litigation that the cutback was illegal, see note 1 supra, it asserted that Blue Cross-Blue Shield's concerns could be alleviated by requiring the government to restore the cutback in Blue Cross-Blue Shield's contract. Finally, the court concluded that the pending litigation challenging the terms of the 1982 contracts did not justify postponing open season. In its view, the terms of the contract were "definite and determined," JA 43, even though the Court of Appeals might later reverse the District Court's ruling that the 6.5 percent cutback was contrary to law.
 
 
 7
 The preliminary injunction ordered OPM to begin open season on or before December 7, 1981, to issue appropriate informational brochures to all employees, and to announce the open season by an appropriate bulletin. Further, it ordered OPM to rescind its November 6 FPM bulletin and its November 12 notice of interim regulations in the Federal Register. Finally, the court ordered OPM to enter into a contract with Blue Cross-Blue Shield that did not include the 6.5 percent reduction in benefits required by OPM on October 21. JA 47. The injunction was partially stayed by this court on December 4, 1981.[2]
 
 
 8
 On December 21, 1981, by judgment, this court reversed the District Court's decision invalidating the 6.5 percent benefit reduction.[3] OPM reached agreement with the health plan carriers regarding the terms of the 1982 contracts before December 31, 1981.
 
 II. LEGAL ISSUES
 
 9
 Both the government and Blue Cross-Blue Shield have appealed the District Court's preliminary injunction, issued on November 18, 1981, contending that OPM acted lawfully when it postponed the open season scheduled to begin on November 9. We agree that OPM had "good cause" to postpone open season and issue interim regulations without prior notice and comment. 5 U.S.C. § 553(b) (B) (1976). In addition, we conclude that OPM's decision to postpone the scheduled open season was substantively valid; it was not arbitrary, capricious, or an abuse of discretion, id. § 706(b)(2)(A), and it did not violate the contracts between OPM and the health plan carriers.
 
 
 10
 A. The "Good Cause" Exception to the APA's Notice and Comment Requirements
 
 
 11
 OPM announced the postponement of the November-December 1981 open season without prior notice and comment under 5 U.S.C. § 553(c) (1976), and subsequently issued interim regulations. In its brief it relies on the "good cause" exception in 5 U.S.C. § 553(b)(B)-when the agency "for good cause" finds that "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," and incorporates its finding and a brief statement of reasons in the rule, it need not give notice and provide opportunity for comment. The "good cause" standard is incorporated into a parallel exception in the statute applying to OPM. Regulations which do not apply solely to OPM and its employees must be published in the Federal Register, with opportunity for public comment as provided by 5 U.S.C. § 553, except for "any proposed rule or regulation which is temporary in nature and which is necessary to be implemented expeditiously as a result of an emergency." 5 U.S.C. § 1103(b)-(c) (Supp. IV 1980).
 
 
 12
 Exceptions to the provisions of Section 553 "will be narrowly construed and only reluctantly countenanced." American Fed'n of Gov't Employees v. Block, 655 F.2d 1153, 1156 (D.C.Cir.1981); State of N.J., Dep't of Environmental Protection v. USEPA, 626 F.2d 1038, 1045 (D.C.Cir.1980). Use of the exception should be limited to emergency situations, so that the section does not become an all-purpose escape clause. Moreover, the courts will closely examine the agency's proffered rationale. AFGE v. Block, supra, 655 F.2d at 1157 n.6; Council of the Southern Mountains, Inc. v. Donovan, 653 F.2d 573, 581-582 (D.C.Cir.1981). Despite the narrowness of the exception, we are persuaded that OPM had "good cause" for its temporary postponement of the November-December 1981 open season.
 
 
 13
 If open season had not been postponed on November 6, the agency would have been compelled to take action which was not only impracticable but also potentially harmful. The purpose of an open season is to permit employees to make an informed choice among health benefit plans; yet no accurate information about 1982 contract terms was available, nor could it possibly have been made available by November 9. On October 31 the District Court in related litigation had ordered OPM to enter into 1982 contracts which did not reflect the significant benefit reductions OPM had ordered in August and October. Four days later the District Court had modified its order, permitting OPM to enforce the August cutbacks. On November 4 the government filed notices of appeal from both orders. Thus, when OPM issued its postponement order on November 6, the eventual terms of the 1982 health plan contracts were entirely uncertain.
 
 
 14
 In addition, OPM found that immediate holding of an open season might threaten the financial stability of the federal employee health benefit program. JA 115. The Blue Cross-Blue Shield service benefit plan, which insures approximately half of the federal employees enrolled in the FEHBP, had suffered $200 million in losses during 1981, thereby exhausting its reserves. Because its 1982 premiums would be substantially increased and its benefits reduced, Blue Cross-Blue Shield feared that it would incur massive losses if an open season were held and subscribers were freely able to transfer among plans. Blue Cross-Blue Shield reply brief at 11-12. On October 29, 1981 Blue Cross-Blue Shield notified OPM that it was willing to enter into a contract for 1982 only if open season would be postponed until a solution to its actuarial risks could be effected. On October 31 OPM and Blue Cross-Blue Shield agreed to a provision permitting Blue Cross-Blue Shield to withdraw during mid-year if an open season took place. Blue Cross-Blue Shield brief at 15-18.
 
 
 15
 The situation facing OPM on November 6, 1981 was an "emergency" within the scope of the "good cause" exception. The agency's action was required by events and circumstances beyond its control, which were not foreseen in time to comply with notice and comment procedures. See Council of the Southern Mountains, Inc. v. Donovan, supra, 653 F.2d at 581-582 (implementation date for safety regulations postponed because, despite agency's diligent efforts, field tests not completed and supplies of safety equipment insufficient); Northwest Airlines, Inc. v. Goldschmidt, 645 F.2d 1309, 1320-1321 (8th Cir. 1981) (agency promulgated allocations of takeoff and landing slots at major airport shortly after airline committee notified the agency that, for the first time in its history, members had been unable to reach agreement among themselves). This is not a case in which the agency received substantial prior notice of a statutory deadline, as in a number of cases refusing to find "good cause" for proceeding without notice and comment. See, e.g., State of N.J., Dep't of Environmental Protection v. USEPA, supra, 626 F.2d at 1047; Kollett v. Harris, 619 F.2d 134, 145 (1st Cir. 1980); Sharon Steel Corp. v. EPA, 597 F.2d 377, 379-380 (3d Cir. 1979); U. S. Steel Corp. v. EPA, 595 F.2d 207, 213 (5th Cir. 1979); Consumers Union v. Sawhill, 393 F.Supp. 639 (D.D.C.1975), aff'd, 523 F.2d 1404 (TECA 1975).
 
 
 16
 The agency's emergency decision was necessary to avoid action that would have been futile because of the unavailability of necessary materials-in this case, informational brochures about the 1982 health plans. See Council of the Southern Mountains, Inc. v. Donovan, supra, 653 F.2d at 581-582 (equipment for safety program not available in sufficient quantity and not completely tested). If open season had been held as scheduled, the resulting actuarial disarray might have posed a serious threat to the financial stability of the benefit program. Courts have upheld a "good cause" exception when notice and comment could result in serious damage to important interests. See, e.g., Northwest Airlines, Inc. v. Goldschmidt, supra, 645 F.2d at 1320-1321 (urgent need for efficient use of airspace and notice to traveling public of airline flight schedules); AFGE v. Block, supra, 655 F.2d at 1157 (use of antiquated guidelines would have caused economic harm and disruption to poultry processors, and might have resulted in poultry shortages or increased consumer prices); Nader v. Sawhill, 514 F.2d 1064, 1068 (TECA 1975) (prior announcement of price increase could cause producers to withhold oil from the market, exacerbating already critical supply shortage); DeRieux v. The Five Smiths, Inc., 499 F.2d 1321 (TECA), cert. denied, 419 U.S. 896, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974) (prior announcement of price freeze would have caused rush to raise prices before effective date, contributing to inflationary spiral).
 
 
 17
 Finally, the agency intended its action to be temporary. Prior to entry of the District Court's preliminary injunction on November 18, 1981, OPM had instituted notice and comment procedures for final rulemaking regarding future rescheduling of open seasons. JA 118-119, 46 Fed.Reg. 55679-55680 (1981). Had the District Court not erroneously issued the injunction on November 18, OPM would have received public comment until December 14, 1981. OPM's compliance with the District Court's order to rescind the notice thwarted completion of the process. As in Council of the Southern Mountains, Inc. v. Donovan, supra, 653 F.2d at 582, the initially limited scope of the agency's emergency order influences our finding that OPM had good cause to dispense with prior notice and comment. Cf. AFGE v. Block, supra, 655 F.2d at 1157 (temporary regulations justified, but not permanent regulations).
 
 
 18
 B. Challenges to the Substantive Validity of OPM's Action
 
 
 19
 Although the District Court's injunction was based on its finding of a procedural violation-a finding we hold to be erroneous-appellees offer alternative grounds for upholding the injunction. First, they contend that, apart from the procedures followed by OPM, postponement of open season was arbitrary, capricious, and an abuse of discretion. Second, they assert that their 1981 contracts guaranteed an open season in November and December 1981. We are not persuaded by either contention.
 
 
 20
 When the substantive validity of an agency's informal action is challenged, the role of a reviewing court is limited. In light of the facts set forth above, we find that OPM's action was neither arbitrary, capricious, nor an abuse of discretion. Assessing the situation on November 6, OPM could not with any assurance have predicted when the courts would resolve the pending litigation regarding its benefit reductions, permitting it to establish the final terms of the 1982 plans. Nor could the agency have known, when it decided to postpone open season, how much time would be required to resolve the actuarial problems that threatened to trigger withdrawal of its largest health plan carrier. In these circumstances, OPM was not required on November 6 to set a definite future date for holding open season.
 
 
 21
 We also reject appellees' contract claims, because we agree with the District Court that appellees have misconstrued the contract provisions. Memorandum opinion at 4 n.1, JA 39. The health carriers' contracts incorporate the health benefit plan statute and the OPM regulations generally as terms of the contract, see, e.g., JA 416 (NTEU contract). However, this inclusion is qualified by the next subsection of the contract, which implicitly incorporates subsequent amendments to OPM regulations unless they would increase the carrier's liability. JA 417. As the District Court found, appellees have not demonstrated that the interim rule amending the open season regulation would increase the liability of any appellee carrier. Thus OPM did not breach any contract by postponing the 1981 open season.
 
 
 22
 C. Permissible Duration of Interim Regulations
 
 
 23
 We reverse the preliminary injunction granted by the District Court on the ground that OPM's November 6, 1981 postponement of open season and its November 12, 1981 announcement of an interim regulation dispensed with notice and comment for "good cause." As this court has previously recognized, however,
 
 
 24
 (c)ommon sense suggests that any administrative action taken in a rare "emergency" situation such as the one at hand, while perhaps necessarily "immediately effective," need only be temporary, pending public notice-and-comment procedures. * * *
 
 
 25
 AFGE v. Block, supra, 655 F.2d at 1157 (footnote omitted). The potential danger to the financial stability of the federal health benefits program permits OPM to postpone open season until it has held notice and comment procedures to study the extent of the threat and possible measures to alleviate it. In light of our reversal of the District Court's preliminary injunction, OPM is free to reinstate the temporary regulation announced in the Federal Register on November 12, 1981 in order to provide legal authority for its continued temporary postponement of open season.
 
 
 26
 The validity of the interim regulation, however, is conditioned on expeditious conduct of notice and comment procedures in good faith. On the eve of oral argument OPM notified the court and the other parties that it has decided to institute such procedures. Supplemental brief of government appellants at 1-6. It has issued a tentative proposal to hold an open season in May 1982 and invites public comment on a number of issues: whether this open season should take place, whether it should be followed by a regularly scheduled open season in November and December 1982, and whether changes in open season procedures or eligibility rules for various health plans should be adopted to reduce the potential dangers to the financial stability of the program. 47 Fed. 6283 (February 11, 1982); see Appendix A (text of Federal Register notice). OPM has scheduled a public hearing on February 22 and 23, 1982.
 
 
 27
 We hold that, as long as OPM continues in good faith with these notice and comment procedures, it is in compliance with the Administrative Procedure Act. The District Court's preliminary injunction is vacated.
 
 
 28
 So ordered.
 
 APPENDIX A
 Proposed Rules
 Federal Register
 Vol. 47, No. 29
 Thursday, February 11, 1982
 OFFICE OF PERSONNEL
 MANAGEMENT
 5 CFR Part 890
 Federal Employees Health Benefits
 Program; Open Season and Other
 Administrative Actions; Public Hearing
 AGENCY: Office of Personnel
 Management
 
 29
 ACTION: Notice of public hearing.
 
 
 30
 SUMMARY: The Office of Personnel Management will hold public hearings on its proposals to hold a health benefits open season in May 1982 and to obtain views on proposed administrative changes in the Federal Employees Health Benefits (FEHB) Program.
 
 
 31
 DATES: The public hearings will be held at the U. S. Office of Personnel Management beginning at 1 p.m. on February 22 and at 10 a.m. on February 23, 1982, in the Auditorium, Ground Floor, 1900 E Street NW., Washington, D. C.
 
 
 32
 FOR FURTHER INFORMATION CONTACT: Kevin Burns, Assistant Director for Insurance Programs, Compensation Group, OPM, Room 809, 1717 H St. NW., Washington, D. C. 20415; telephone (202) 632-4670.
 
 
 33
 SUPPLEMENTARY INFORMATION: On November 12, 1981, interim regulations were published in the Federal Register (46 FR 55679), effective November 12, 1981. These interim regulations authorized changes in the regularly scheduled open season by announcement of the Director of OPM through an FPM Bulletin. Also, the open season scheduled for 1981 was postponed to a time to be announced later or to the applicable period during 1982, whichever was earlier.
 
 
 34
 Subsequent to the publication of OPM's interim regulations, the United States District Court for the District of Columbia ordered the United States Government to hold an open season for a minimum of two weeks beginning on December 7, 1981.
 
 
 35
 Accordingly, a notice was published in the Federal Register (46 FR 59227) on December 4, 1981, announcing a general open season to be held December 7, 1981, through December 31, 1981.
 
 
 36
 On December 4, 1981, the United States Court of Appeals for the District of Columbia Circuit stayed the prior order of the United States District Court and further directed the United States Government to hold only a limited open season for persons not then enrolled under the FEHB Program. A notice was published in the Federal Register (46 FR 61066) on December 15, 1981, announcing this modification.
 
 
 37
 OPM now proposes to conduct a general open season from May 3, 1982, to and including May 28, 1982, with enrollment changes becoming effective for employees on the first day of the first pay period in July, 1982, and for annuitants on July 1, 1982.
 
 
 38
 In view of these circumstances, and to assure that all interested parties have an opportunity to present their views, the Director of OPM has decided to hold two days of public hearings on the following proposals:
 
 
 39
 1. The proposal to conduct a general open season from May 3, 1982, to and including May 28, 1982, with enrollment changes becoming effective for employees on the first day of the first pay period in July, 1982, and for annuitants on July 1, 1982. Among the issues to be addressed are:
 
 
 40
 (a) What effects, if any, will this proposal have upon the stability of the FEHB Program, particularly with respect to the phenomena of adverse selection and demographic imbalance?
 
 
 41
 (b) Should the regularly scheduled open season which normally occurs in November-December 1982 also be held if open season is held in May 1982?
 
 
 42
 (c) Will there be sufficient claims experience to establish rates and benefits for an open season in November-December 1982 following a May 1982 open season?
 
 
 43
 (d) With what frequency and at what times should future open seasons be held?
 
 
 44
 2. A proposal to institute a number of other changes to improve the overall administration of the FEHB Program. Among these are:
 
 
 45
 (a) To discontinue the practice of requiring carriers to offer selected benefits not required of all carriers.
 
 
 46
 (b) To levy a transfer fee on enrollees who change plans during an open season.
 
 
 47
 (c) To permit carriers to exclude certain pre-existing health conditions for enrollees who change plans.
 
 
 48
 (d) To require all plans in the program to accept annuitants.
 
 
 49
 (e) To impose certain utilization controls such as requiring second surgical opinions and pre-admission diagnostic testing.
 
 
 50
 (f) To focus more audit effort on claims paid by plans rather than on administrative expenses.
 
 
 51
 The public will be given an opportunity to make oral presentations. In the discretion of the presiding official, speakers will be limited to a maximum of 7 minutes for their presentations. All requests to make oral presentations for the record should be received no later than February 18, 1982.
 
 
 52
 OPM will also accept written comments and other appropriate data from any interested party, in advance of the hearings. Written comments and data submitted to OPM should be received no later than February 22, 1982.
 
 
 53
 Requests to make oral presentations and submission of written comments should be addressed to Kevin Burns, at the office location and telephone number cited above.
 
 
 54
 Office of Personnel Management.
 
 
 55
 Donald J. Devine,
 
 
 56
 Director.
 
 
 57
 (FR Doc. 82-3804 Filed 2-10-82; 8:45 am)
 
 BILLING CODE 6325-01-M
 
 
 [1]
 In August 1981 and again in October 1981 OPM had instructed the participating health plan carriers to reduce proposed benefits under the 1982 contracts in order to bring the government's total contribution within its budget allowance for fiscal year 1982. On October 31, 1981 the District Court entered a preliminary injunction ordering OPM to agree to contracts for 1982 which did not reflect the August and October reductions. JA 56-59. Four days later, on November 4, the court amended its order to permit the contracts to include the August cutbacks, but not the 6.5% cutback in October. JA 60
 
 
 [2]
 This court did not stay the injunction with respect to those federal employees who were not then enrolled in any federal health benefit plan. OPM held limited open seasons for these employees during December 1981
 
 
 [3]
 As a result of that decision by this court, that part of the District Court's November 18, 1981 injunction which ordered OPM to agree to a contract with Blue Cross-Blue Shield without the 6.5% benefit reduction is not before us in this case