**PACIFIC COAST MEAT JOBBERS ASSOCIATION, INC., et al., Plaintiffs-Appellants,**

**v.**

**The COST OF LIVING COUNCIL, Defendant-Appellee.**

**No. 9-7.**

Temporary Emergency Court of Appeals.

Aug. 18, 1973.

———◆———

Andrew H. Field, San Francisco, Cal. (Barry D. Hovis, Victor P. Bonfilio, Jr., San Francisco, Cal., with him on the brief), Angell, Adams & Holmes, San Francisco, Cal., for plaintiffs-appellants.

John N. Hanson, Atty., Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson, Stanley D. Rose, Robert Eliot Easton, Sr., Attys., Dept. of Justice, with him on the brief), for defendant-appellee.

Before CARTER, CHRISTENSEN and ESTES, Judges.

ESTES, Judge.

This is an appeal under Section 211 of the Economic Stabilization Act of 1970, as amended, by plaintiffs, Pacific Coast Meat Jobbers Association, Inc., National

Association of Meat Purveyors, Inc., and their members,[1] from an order of the United States District Court for the Northern District of California, denying plaintiffs a preliminary injunction against the Cost of Living Council (C. L.C.) restraining the enforcement of the C.L.C.'s temporary meat price ceiling regulations against any of the parties to this litigation.[2]

There is also before us an original application for a preliminary injunction on the same grounds as presented in the trial court. By stipulation of the parties, which will be filed *nunc pro tunc,* in the court below, it was agreed that if this court denied the motion for a preliminary injunction, the motion of the C.L.C. to dismiss the complaint should also be granted. An appropriate order will be filed *nunc pro tunc* in the court below. It was further agreed that the notice of appeal heretofore filed from the decision below would include a review of the decision dismissing the complaint. Counsel for the plaintiffs expressly acknowledged that by this stipulation he was agreeing that no question of the failure of the complaint to state a cause of action was presented below.

On March 29, 1973, the C.L.C. issued Subpart M of its Regulations as "Temporary Meat Price Ceilings," which established ceilings on the prices which could be charged or paid for most meat.

On June 13, 1973, the President issued Executive Order 11723 providing for a comprehensive freeze for a period of 60 days on the prices of all commodities and services offered for sale except the prices for raw agricultural products.

On June 15, the C.L.C. issued "Freeze Regulations" (6 C.F.R. Part 140) to implement Executive Order No. 11723.

On July 19, 1973, the C.L.C. issued its Special Price Rules for Food effective from July 18 to September 12, 1973 (6 C.F.R. 140.91–140.99). These Special Rules and Amendments, among other things, lifted the ceiling on prices charged or paid for most meat, except beef. Under the amendments, it is permissible to charge or pay a price for any meat item derived from swine or sheep above the ceiling price for that item so long as that increased price does not exceed an allowable amount calculated pursuant to the amended regulations. [6 C.F.R. 130.121, 130.127, 130.57D(e)]

1. Pacific Coast Meat Jobbers Association, Inc. has approximately 100 members and the National Association of Meat Purveyors, Inc. has approximately 400 members, as set forth by exhibits to the complaint.

2. Plaintiffs' Complaint also prayed "that the court enjoin the Council from enforcing regulations or other procedures with respect to meat products derived from cattle which are different from regulations and procedures with respect to meat products derived from swine and sheep." However, the granting of such relief might be tantamount to a judicial decision that specific regulations should be applied to appellants and excepting them from the ceilings and subjecting them to certain other regulations, which is a function vested by the Congress in the President and the C.L.C. Plaintiffs' counsel conceded at the hearing in the District Court that "It is not within the power of the court to fashion regulations." (Tr. 8–1–73, p. 5) Plaintiffs' "Memorandum

of Points and Authorities in Support of a Preliminary Injunction," filed in the District Court, states, "Although placing the beef industry on a par with all other food products is the most desirable and practical approach to this problem, there is some question under the decisions of the federal courts whether this Court has jurisdiction to order such a result. See Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809 (1929); Commonwealth of Massachusetts v. Connor, 248 F.Supp. 656, 659 (D.Mass. 1966); McEachern v. United States, 212 F.Supp. 706 (D.D.C.1963). [To the same effect, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO v. Connally (D.D.C.1971), 337 F.Supp. 737.] Accordingly, plaintiff in this Motion for Preliminary Injunction limits its request and asks only that the Court restrain and set aside the regulations of the Cost of Living Council which extend the freeze on beef products until September 12, 1973."

Only one of the plaintiffs sought an administrative exception from the price ceilings (under Sec. 207(b) of the Act or C.L.C. Freeze Regulations, Subpart H). The exception has not been acted upon. On July 27, 1973, the plaintiffs commenced this action seeking to enjoin enforcement of these regulations by the C.L.C.

Plaintiffs challenged the C.L.C.'s actions as being arbitrary and capricious and in excess of its authority. They also attack its failure to hold formal hearings in accordance with Sec. 207(c) of the Act, and its failure to make adequate findings and allege that such findings as it did make were not supported by substantial evidence. In addition, plaintiffs charge the C.L.C. with allowing the price ceiling on beef to continue in effect after its alleged effects became apparent without holding further hearings and making modifications thereof. Finally, the C.L.C. actions were alleged to be contrary to the statutory requirements of Sections 203(b)(1), (2) and (5).[3]

The burden which must be borne by the plaintiff in order to obtain preliminary relief is not a light one:

"The standards which should guide the decision to grant a preliminary injunction have been often stated. The movant must show a substantial likelihood of success on the merits, and that irreparable harm would flow from the denial of an injunction. In addition, the trial judge must consider the inconvenience that an injunction would cause the opposing party, and must weigh the public interest as

well." McGuire Shaft & Tunnel Corp. v. Local U. No. 1791, U.M.W., 475 F. 2d 1209, at 1216 (T.E.C.A.1973), cert. den., —— U.S. ——, 93 S.Ct. 3008, 37 L.Ed.2d 1009 (6/18/73).

*Accord see* Pauls v. Secretary of Air Force, 457 F.2d 294, 298 (1 Cir. 1972); Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2 Cir. 1966); Virginia Petroleum Jobbers Ass'n v. F.P.C., 104 U.S.App.D.C. 106, 259 F.2d 921 (D. C.Cir. 1958); Hamlin Testing Labs, Inc. v. A. E. C., 337 F.2d 221 (6 Cir. 1964); Associated Securities Corp. v. S.E.C., 283 F.2d 773 (10 Cir. 1960).

■ It is clear that plaintiffs have not made the showing necessary to entitle them to a preliminary injunction. There is ample evidence in the record to support the District Court's decision that the public interest would be impaired by the granting of relief, that appellants have failed to show arbitrary and capricious action by the C.L.C., and that the C.L.C. action was not beyond its legal authority.

For several reasons, it was entirely reasonable for the C.L.C. to decide to keep the ceiling on beef prices longer than on other meats. There was evidence to show that beef prices were rising faster than other meat prices, and that live poultry, sheep, and swine were being destroyed, while beef was only being withheld from the market. The affidavit of Dr. John T. Dunlop, Director of C.L.C., reveals that this problem was studied thoroughly and a decision reached on the basis of extrapolations from the best data available to the C.L. C.[4]

3. There is no constitutional issue before us. At the trial, counsel for plaintiffs expressly stated that he made no contention of any unconstitutionality, and before this court, in support of plaintiffs' original application for a preliminary injunction, a similar position was taken, apparently in the belief that the statutory and regulatory requirements were equally or more exacting than constitutional limitations.

4. The Cost of Living Council is composed of the following members: the Secretaries of the Treasury, Agriculture, Labor, Commerce, Health, Education and Welfare, Housing and Urban Development, the Director of the Office of Management and Budget, the Chairman of the Council of Economic Advisors, the Director of the Office of Emergency Preparedness, and the Special Assistant to the President for Consumer Affairs. Executive Order 11695, 38 F.R. 1473, January 13, 1973.

This decision is supported by substantial evidence in the record such that we cannot say that the C.L.C. was acting in an arbitrary or capricious manner, or that the decision of the District Court was erroneous. Also, since the President and those to whom he delegates this power are specifically given by the Economic Stabilization Act the power to institute price controls, and the regulations involved here were enacted in furtherance of the statutory goals of fighting inflation and stabilizing the economy, plaintiffs have failed to show that the C.L.C. actions were illegal. Thus it seems clear that plaintiffs were unable to show a substantial likelihood of success on the merits of the suit that would have entitled them to preliminary relief.

While there was testimony in . the record to show that plaintiffs are experiencing financial losses from the beef price freeze, it is not clear that the harm will be irreparable. The freeze will end on September 12, 1973, and individual members of plaintiff organizations may avail themselves of the C.L.C. exemption procedures where unnecessary hardships are being experienced.[5] And no showing has been made that the public interest would not be impaired by the inflationary price increases which would occur that much sooner if the freeze regulations continuing the price ceiling were enjoined.

■ In regard to the failure of the C.L.C. to hold public hearings, § 207(c) of the Act provides that "to the maximum extent possible," but not in every case, such hearings be held.[6] In this case the record does not reveal improvident action, but rather a well-considered step that was reached after extensive consultations, albeit informal ones, with interested groups and individuals, including some members of plaintiff organizations. Obviously, in the emergency presented to the Council, formal hearings in advance of the announcements of the actions of C.L.C. would have been counter-productive, would have aggravated the situation, and there was no necessity for any subsequent hearing to justify continuation.

■ Plaintiffs argue further that the C.L.C. actions being challenged were contrary to §§ 203(b)(1), (2), and (5) of the Act, which generally require the C.L.C. to act fairly and equitably and prevent hardships, market disruptions, and shortages. They allege that since disruptions and shortages are obviously occurring, the C.L.C. must be found to have acted in disregard of these sections of the Act. The obvious answer to this argument is that complete success, or complete fairness, is neither possible nor required in this kind of administrative action. In order for this court to affirm the C.L.C. action and the court below, it is not necessary that we decide that the C.L.C.'s action was:

. . . the only reasonable [method], or even that this Court would have reached the same result if the question had arisen in the first instance in judicial proceedings. Unemployment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946), Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), Udall v. Washington, Virginia and Maryland Coach Co., 130 U.S. App.D.C. 171, 175, 398 F.2d 765, 769, cert. denied, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 561.

In a case such as this the "judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Miss. Valley Barge Co. v. United States, 292 ˙U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934), Udall v. Washington, Va. and Md. Coach Co., id. [Jennings v. Shultz, 355 F.Supp. 1198 (D.D.C.1972)].

---

5. See the Cost of Living Council Freeze Regulations, Subpart H, in accordance with § 207(b) of the Act.

6. The Deputy Director of the C.L.C. found specifically that formal procedures were not practicable. See 38 F.R. 8505 (April 3, 1973).

**1392**

The District Court in its Order found that the defendant C.L.C. did consider all the factors involved and the potential side effects of its action, and made a rational judgment in determining to act as it did. In University of Southern California v. Cost of Living Council, 472 F. 2d 1065, 1068–1069 (T.E.C.A.1972) this court, citing Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1941) and Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L. Ed.2d 616 (1965), stated, "It is a well settled principle that the courts place great weight on the interpretations given to statutes and regulations by those agencies charged with the responsibility of administering them." Similarly, in *Udall* the Supreme Court states at page 16, 85 S.Ct. at page 801:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." Unemployment Comm'n v. Aragon, 329 U.S. 143, 153 [67 S.Ct. 245, 250, 91 L.Ed. 136]. See also *e. g.*, Gray v. Powell, 314 U.S. 402 [62 S.Ct. 326, 86 L.Ed. 301], Universal Battery Co. v. United States, 281 U.S. 580, 583 [50 S.Ct. 422, 74 L.Ed. 1051]. "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.'" Power Reactor Co. v. Electricians, 367 U.S. 396, 408 [81 S.Ct. 1529, 1535, 6 L.Ed. 2d 924].

The judgment of the District Court is Affirmed, and plaintiffs' original application here for injunctive relief, for similar reasons, is Denied.