**MARTIN OIL SERVICE, INC., Plaintiff,**

v.

**KOCH REFINING CO. and Koch Industries, Inc., Defendants.**

**No. 81 C 1844.**

United States District Court, N.D. Illinois, E.D.

Feb. 1, 1984.

Peter B. Freeman, Michael D. Renner, Hopkins & Sutter, Chicago, Ill., William H. Bode, John E. Varnum, Alfred Lawrence Toombs, Batzell, Nunn & Bode, Washington, D.C., for plaintiff.

Pope, Ballard, Shepard & Fowle, Chicago, Ill., Quarles & Brady, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Before the court is defendants' motion for partial summary judgment. By consent of both parties this court deferred decision on this motion pending the result in two consolidated cases before the Temporary Emergency Court of Appeals, the court with exclusive appellate jurisdiction over this case. On December 20, 1983, the appellate court reached its decision.

## I. *Background*

Plaintiff brought this action to recoup overcharges on 875,900,000 gallons of motor gasoline sold to it by defendants between August 19, 1973 and January 28, 1981. Plaintiff's fourth cause of action alleges that defendants increased their prices beyond the level allowed under the applicable regulations by misapplying the Federal Energy Agency's (FEA)[1] deemed recovery rule. Defendants' twelfth affirmative defense alleges the invalidity of that rule. Defendants move for partial summary judgment asking for dismissal of plaintiff's fourth cause of action and judgment in defendants' favor on its twelfth affirmative defense. Defendants argue that the deemed recovery rule is invalid on procedural and substantive grounds.

The deemed recovery rule will be discussed only briefly because both sides are well aware of its mechanics. At the time of enactment of the deemed recovery rule an oil refiner could not charge a class of purchasers more than the base price for the product sold, except under certain specific conditions. 10 C.F.R. § 212.82 (1975).[2] A class of purchasers is made up of purchasers to whom a seller has charged a comparable price for comparable property pursuant to customary price differential between purchasers. *See* 10 C.F.R. § 212.-31 (1975). One purpose of the deemed recovery rule was the maintenance of these price differentials. *See Mobil Oil Corp. v. Department of Energy*, 728 F.2d 1477 at 1480, (Temp.Emer.Ct.App., 1983). The base price for a product was the cost for that product on May 15, 1973, plus increased product costs incurred between May 1973 and the measurement month, usually the month before the sale. *See* 10 C.F.R. § 212.82(b) (1975).

The refiner, though unable to charge more than the base price, was allowed to charge less than that price. The regulations allow the refiner to carry over or

"bank" the increased product costs it failed to recover by charging less than the base price. *See* 10 C.F.R. § 212.83(e)(1) (1975). Whenever a refiner added previously unrecouped costs to its price it had to reduce its bank value accordingly. *See generally Mobil Oil Corp. v. Department of Energy*, *supra*, at 1480–1481.

In September 1975, without prior notice or opportunity for comment, the FEA promulgated the deemed recovery rule. That rule required the refiner to pass through its increased costs uniformly among all classes of purchasers or suffer a cost recovery penalty. The rule stated that refiners would be deemed to have recovered their increased costs as if they had recovered from all classes of purchasers costs equal to the highest increment actually recovered from any one class. Thus, if a refiner applied increased costs unequally, by adding varying increments of increased costs to prices charged to different classes of customers, the refiner could not bank all of its unrecouped costs. *See id.* at 1482–1483; 10 C.F.R. § 212.83(e)(1) (1975).

Plaintiff alleges in its fourth cause of action that defendants banked increased product costs that the rule required to be deemed recovered. Plaintiff claims defendants added these improperly banked costs to prices charged, resulting in prices above defendants' allowable base price. Defendants counter by attacking the validity of the rule on both procedural and substantive grounds.

## II. *Procedural Attack*

■ Defendants charge that the deemed recovery rule was procedurally invalid because the FEA failed to give notice and allow for public comment. They also claim that the FEA did not meet the stringent conditions required to show cause for dispensing with notice and public comment. Finally, they claim that there was insuffi-

---

**1.** That agency has been subsumed within the Department of Energy.

**2.** The regulations in effect at the time of promulgation of the deemed recovery rule are be-

ing cited and discussed. Only those regulations are relevant to the determinations made in this case.

cient notice for comment with regard to the repromulgation of the rule.

Defendants' procedural attack against the deemed recovery rule has been entirely defused by the Temporary Emergency Court of Appeals decision in *Mobil Oil Corp. v. Department of Energy*, 728 F.2d at 1480, (Temp.Emer.Ct.App., 1983). In *Mobil Oil*, the Court held that the FEA's finding that an announcement of the deemed recovery rule before promulgation could have caused serious market distortions was adequate support for its decision to promulgate the rule without prior notice or opportunity for comment. *Id.* at 1490–1494. The Court also held that subsequent notice of comment on the rule, on December 5, 1974, was also procedurally valid. *Id.* at 1494–1496. In short, the Court completely upheld the procedural validity of the rule.

The Temporary Emergency Court of Appeals has exclusive appellate jurisdiction over the questions presently before this court. *See* 12 U.S.C. § 1904 note (Economic Stabilization Act of 1970, § 211(b)(2)). This court is bound by the decisions of the Temporary Emergency Court of Appeals regarding this issue. Accordingly, pursuant to *Mobil Oil*, the court denies defendants' procedural attack on the deemed recovery rule.

### III. *Substantive Attack*

[2] Defendants also attack the deemed recovery rule on two substantive grounds. First, they claim the rule is inconsistent with the express provisions of the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. §§ 751, *et seq.*, the enabling act for the regulation in question. Second, they claim the FEA failed to properly consider the explicit statutory objectives of the EPAA, as required by the statute. Judicial review of informal rulemaking, as was involved in the promulgation of the deemed recovery rule, is governed by the provisions of 5 U.S.C.

§ 706(2). *See Mobil Oil Corp. v. Department of Energy, supra; McColloch Gas Processing v. Department of Energy*, 650 F.2d 1216, 1220 (Temp.Emer.Ct.App.1981). That statute states:

The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law:

\* \* \* \* \* \*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

\* \* \* \* \* \*

5 U.S.C. § 706(2). A claim that agency action is violative of a statutory limitation "necessarily entails a first-hand judicial comparison of the claimed excessive action with pertinent statutory authority." *Western Union Telegraph Co. v. Federal Communications Commission*, 541 F.2d 346, 354 (3d Cir.1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977).

Defendants' claim that the deemed recovery rule violates the dollar-for-dollar passthrough requirement of the EPAA set out in 15 U.S.C. § 753(b)(2)(A). That section states:

(2) In specifying prices for prescribing the manner for determining them, the regulation under subsection (a) of this section—

(A) shall provide for a dollar-for-dollar passthrough of net increases in the cost of crude oil, residual fuel oil, and refined petroleum products at all levels of distribution from the producer through the retail level.[3]

Defendants claim that by deeming recovered cost increases that in fact were not recovered, the rule violated the dollar-for-

---

3. Plaintiff notes that at the time of promulgation of the deemed recovery rule the statute applied only "to all marketers or distributors at the retail level," thus not covering refiners. De-

fendants dispute that interpretation. In view of the court's construction of the present statute, no interpretation of the past statute is required.

dollar passthrough provision cited above. They interpret section (b)(2)(A) as requiring that dollar-for-dollar passthroughs be allowed in all circumstances. They find support in the congressional desire that

> prices for allocated fuels will be set at levels or pursuant to methods which will permit adequate compensation to assure that private property is not implicitly confiscated by the government.

H.R.Conf.Rep. No. 93–628, 93d Cong., 1st Sess., *reprinted in* (1973) U.S.Code Cong. & Ad.News, 2688, 2703. By not allowing recovery of all increases in costs they claim the deemed recovery rule implicitly confiscates a refiner's property.

■ Section (b)(2)(A), however, does not require that all refiners, under all circumstances, be allowed to recover all their increased costs. Courts have held that the statute only requires refiners be given a reasonable opportunity to recover all their increased costs. *See Exxon Corp. v. Federal Energy Administration,* 417 F.Supp. 516, 522 (D.N.J.1975); *Exxon Corp. v. Federal Energy Administration,* 398 F.Supp. 865, 875 (D.D.C.1975), *aff'd sub nom., Texaco, Inc. v. Federal Energy Administration,* 531 F.2d 1071 (Temp.Emer.Ct.App.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). This is the interpretation supported by the FEA, *see* 39 Fed.Reg. 32306, 32307 (Sept. 5, 1974), *Exxon Corp. v. Federal Energy Administration,* 398 F.Supp. at 875, and as such is entitled to deference and should be followed, absent compelling indications that it is wrong. *See DeAvilia v. Civiletti,* 643 F.2d 471, 475 (7th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 157 (1981).

■ In addition, Congress has explicitly and implicitly approved the rule as being in accord with the statutory requirements of the EPAA. On March 5, 1975, the Senate Committee on Interior and Insular Affairs reported that the intent of Congress, as expressed in the EPAA, was to assure equitable prices for petroleum products. The Committee stated that Congress meant to require that "each class of purchaser is charged a price reflecting the maintenance of customary price differentials within the industry." S.Rep. No. 94–26, 94th Cong., 1st Sess. 37 (1975). The Committee referred to an FEA regulation designed to meet that requirement, apparently the deemed recovery rule, and determined not to recommend passage of a statutory mandate requiring maintenance of price differentials, relying instead on enforcement of the FEA regulation. This occurred despite explicit reference to the dollar-for-dollar passthrough provision. *Id.* at 37–38. The views of a subsequent congressional committee on the meaning of a statute are entitled to significant weight. *See Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). In addition, after expressly being informed of the workings of the deemed recovery rule, *see* Statement of Frank G. Zarb, Before Senate Committee on Interior and Insular Affairs, at 30–33 (May 19, 1975), Congress reviewed and amended the EPAA without rejecting the regulation. *See* Pub.L. 94–163, 89 Stat. 946, 948 (Dec. 22, 1975). Congress' decision not to reject the regulation, while amending the statute, is also relevant. *See Andrus v. Allard,* 444 U.S. 51, 57, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979). In light of the language of the statute, the FEA's interpretation of the statute, judicial construction, and Congress' implicit and explicit acceptance of that meaning, this court finds that section (b)(2)(A) only requires a reasonable opportunity to recoup passthrough costs. The deemed recovery rule, by providing opportunity for such passthrough, is not violative of that section.

■ Defendants also argue that the FEA did not adequately or correctly consider the statutory objectives set out in EPAA, which the FEA is required to provide for, "to the maximum extent practicable." *See* 15 U.S.C. § 753(b)(1). Such an attack is to be reviewed by this court under the "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law" standard of 5 U.S.C. § 706(2)(A). *See Texaco, Inc. v. Federal*

*Energy Administration,* 531 F.2d 1071, 1076 (Temp.Emer.Ct.App.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). Under that standard the inquiry into an agency's action is " 'whether the decision was based on a consideration of relevant factors, whether there has been a clear error of judgment and whether there is a rational basis for the conclusions approved by the administrative body.' " *Mobil Oil Corp. v. Department of Energy,* 610 F.2d 796, 801, (Temp.Emer.Ct.App. 1979), *cert. denied* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

■ Defendants contend the FEA did not sufficiently consider the statutory objectives in promulgating the regulation and that the regulation was therefore beyond the FEA's statutory authority and invalid. *See Mobil Oil v. Department of Energy,* 610 F.2d at 802. These objectives are found at 15 U.S.C. § 753(b)(1)(A)–(I). The evidence discloses, however, that the FEA did in fact consider the objectives of the EPAA in promulgating the rule. In the preamble to the rule the FEA described the goal of the deemed recovery rule, the maintenance of price differentials, as "fundamental to the FEA system of price regulations." 39 Fed.Reg. 32306, 32307 (Sept. 5, 1974). The FEA found that continuation of the practices designed to be curtailed by the rule "would be injurious to the public welfare." *Id.* The protection of public welfare is one of the specifically enumerated objectives of the EPAA. *See* 15 U.S.C. § 753(b)(1)(A). On September 10 the FEA proposed modifications of the rule in a rule-change proposal promised in the September 5 preamble. *See Mobil Oil Corp. v. Department of Energy, supra,* at 1493. The note on these modifications is relevant in determining factors considered by the FEA promulgating the rule. *Id.* In that note, 39 Fed.Reg. 32718, 32722–23 (Sept. 10, 1974), the FEA mentioned considerations involving a number of the objectives stated in the EPAA, including: (1) the concern for market dislocations caused by price inflexibility, *see* 15 U.S.C. § 753(b)(1)(I); (2) the need for price mechanisms to play a role in the market, *see id.* at (H); (3) the desire for equitable prices for independent regional marketers, *see id.* at (F); and (4) the need to protect the independent sector, *see id.* at (D). In addition the FEA specifically noted that the rule "can have results that appear to be at odds with the objectives of the EPAA." 39 Fed.Reg. at 32723. It is clear from this review that the FEA did consider the statutory objectives of the EPAA in reaching its decision.

■ Defendants also contend that the FEA incorrectly weighed the objectives and reached a result contrary to the mandates of the Act. In reviewing this judgment the court is aware that:

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made."

*Motor Vehicle Manufacturer's Association v. State Farm Mutual Insurance Co.,* — U.S. ——, ——–——, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443, 457–58 (1983), *citing Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962).

■ Under such a narrow standard, this court is not unable to find a rational connection between the EPAA's objectives and the FEA's decision to promulgate the deemed recovery rule. The FEA was concerned with protecting the independent sector and preserving customary price differentials. *See* 39 Fed.Reg. 32722, 32722–23 (Sept. 10, 1974). These problems, as well as a number of the statutory objectives, were explicitly considered in reaching the FEA's decision. *Id.* It is not required, or even possible, for the FEA to satisfy all the statutory objectives with each regulation. *See* H.R.Conf.Rep. 93–628, 93d Cong., 1st Sess., *reprinted in* (1973) U.S.Code Cong. & Ad.News, 2688. "It is fully recognized that, in some instances, it may be impossible to satisfy one objective without

sacrificing the accomplishment of another." *Id.* A balancing is required; no one objective can be considered a mandatory duty. *General Crude Oil Co. v. Department of Energy,* 585 F.2d 508, 513 (Temp.Emer.Ct. App.1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). This court finds that the EPAA objectives of protecting the independent segment of the industry, *see* 15 U.S.C. § 753(b)(1)(D), and fostering equitable distribution and pricing, *see id.* at (F), were sufficiently strong justifications for allowing the rule, despite possible harm to economic efficiency, *see id.* at (H), and possible economic distortion and inflexibility, *see id.* at (I). The court finds a rational basis for the rule. This conclusion is buttressed by Congress' explicit and implicit acceptance of the rule as in harmony with the Act discussed above. Accordingly, defendants' substantive attack on the rule is also denied.

### IV. *Conclusion*

■ One final issue needs to be resolved. In its motion defendants asked for dismissal of plaintiff's fourth cause of action for overcharges incurred between August 20, 1973 and September 1, 1974. The deemed recovery rule was not valid until September 1, 1974. *See* 39 Fed.Reg. at 32307 (Sept. 5, 1974). Accordingly, that request will be granted.

For the foregoing reasons, defendants' motion for summary judgment is denied, except for dismissal of plaintiff's fourth cause of action for overcharges that occurred between August 20, 1973 and September 1, 1974.